BART M. DAVIS, ID STATE BAR NO. 2696
UNITED STATES ATTORNEY
WILLIAM M. HUMPHRIES, WA STATE BAR NO. 44452
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
800 E. PARK BLVD., SUITE 600
BOISE, IDAHO 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-1414
EMAIL: bill.humphries@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. DOUGLAS V. TOOMER,<br><br>       Plaintiffs,<br><br>v.<br><br>TERRAPOWER, LLC and BATTELLE ENERGY ALLIANCE, LLC,<br><br>       Defendants. | Case No. 4:16-cv-00226-DCN<br><br>**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS RELATOR'S COMPLAINT**<br><br>**<u>FILED UNDER SEAL</u>** |

In support of the United States' Motion to Dismiss Relator's Complaint, the United States provides this memorandum with background, legal authority, and analysis.  Pursuant to 31 U.S.C. § 3730(c)(2)(A), the United States seeks dismissal of all but count eight of the Relator's Amended Complaint Pursuant to the Federal False Claims Act, 31 U.S.C. § 3729 *Et Seq.* (ECF No. 10).  Count eight seeks relief for retaliation under 31 U.S.C. § 3730(h) and is a claim of the Douglas Toomer ("Relator") individually, not a claim of or on behalf of the United States.

All other claims in the complaint, which are claims of or on behalf of the United States, should be dismissed.  The False Claims Act is meant to protect the Government from fraud and

UNITED STATES' MEMORANDUM SUPPORTING MOTION TO DISMISS - 1

restore the losses from fraud.  This case hinges on whether an invention is a "Subject Invention" under a government contract. It is not in the Government's interest to decide and assert "Subject Invention" status at this time.  The Government has the ability through contract and statute to assert "Subject Invention" status in the future, if circumstances warrant.  With all rights intact to assert "Subject Invention" status, the Government has suffered no loss, and the Government has no interest in pursuing or having the Relator pursue this case.  The Government has an affirmative interest in avoiding unnecessary expense of time and money related to this suit.  In addition, this is particularly relevant when the Government may have to reimburse one of the defendants for legal expenses if that defendant successfully defends the case.

## I.    BACKGROUND AND FACTS

### A.    Parties

The United States Department of Energy ("DOE") owns Idaho National Laboratory ("INL").  INL is a Federally Funded Research and Development Center operated under Federal Acquisition Regulation (FAR) Part 35.  Contract § C; 48 C.F.R. pt. 35.  "INL is the nation's leading center for nuclear energy research and development."[1]

Battelle Energy Alliance, LLC ("BEA") is the management and operating contractor of DOE's Idaho National Laboratory under Contract No. DE-AC07-05ID14517 ("Contract").[2] DOE acquisition regulations require that management and operating contractors be legal entities created for the purpose of "performing a specific management and operating contract" such as the INL Contract. 48 C.F.R. § 970.0970-1.  BEA was formed for the purpose of performing the management and operating contract.

---

[1] https://www.inl.gov/about-inl/

[2] http://www.id.doe.gov/doeid/INLContract/INLHomepage.html

UNITED STATES' MEMORANDUM SUPPORTING MOTION TO DISMISS - 2

Douglas Toomer is the "Relator" in this case.  He worked for BEA as a Relationship Manager.  A major part of his responsibilities was to work with TerraPower, LLC ("TerraPower"), a participant in Cooperative Research and Development Agreements ("CRADAs") with BEA.

TerraPower, a private company, focuses on nuclear energy and science innovation.[3] TerraPower participates in DOE's cooperative research and development program and has entered into CRADAs with BEA at the INL.  TerraPower developed the duplex-liner invention that Relator alleges should be considered a "Subject Invention" under CRADAs.

B.     Basic Procedural History and Allegations in Complaint

Relator filed his original complaint in June 2016 and his Relator's Amended Complaint Pursuant to the Federal False Claims Act, 31 U.S.C. § 3729 e*t seq.*, filed under seal, (ECF No. 10) ("Complaint") on February 10, 2017.  The case has remained under seal to allow the United States time to investigate the allegations.  The United Sates has decided to seek dismissal rather than intervention or declination.

Relator alleges False Claims Act violations by TerraPower and BEA ("Defendants"), alleges retaliation by BEA, makes common law equitable claims, and seeks declaratory relief.

Relator alleges that Defendants knowingly usurped, concealed, and failed to disclose inventions, property rights, and information belonging to the United States as "Subject Inventions" and "Generated Information," as defined in the CRADAs.  Relator alleges that Defendants' actions damaged the United States in various ways.  Relator's allegations focus on a duplex liner developed by TerraPower for use in nuclear fuels (the "duplex liner"), which

---

[3] http://terrapower.com/about

UNITED STATES' MEMORANDUM SUPPORTING MOTION TO DISMISS - 3

Relator contends is a "Subject Invention" under CRADA No. 12-CR-24, entered into on July 13, 2012 by TerraPower and BEA ("CRADA 24").  Therefore, Relator's Complaint hinges on the duplex liner being a "Subject Invention."[4]

The viability of Relator's Complaint turns on the duplex liner being a Subject Invention. Relator assumes it is, and he thus alleges that TerraPower usurped property rights of the United States by filing a patent application related to the duplex liner without previously disclosing the invention to DOE.  He also notes that, in the patent application, TerraPower did not provide a sworn statement discussing the relation of the invention to a CRADA as required under 42 U.S.C. § 2182.  Second, Relator attempts to support his allegations with assertions that TerraPower knowingly continued falsely to assert that it did not develop Subject Inventions during any CRADA work.  Third, Relator alleges that TerraPower concealed the Subject Invention so that it could manufacture and market the duplex liner outside the United States.

As for damages, Relator alleges that the benefits from the Subject Invention and the Generated Information developed are "massive" because the United States is being deprived of billions of dollars in jobs and benefits from manufacturing.  Additionally, Relator alleges that Defendants received millions of dollars in in-kind benefits and liability protection.

Importantly, all of these allegations turn on the existence of a Subject Invention.

Besides alleging violations of the False Claims Act (i.e., 31 U.S.C. § 3729(a)(1)(A)-(D) and (G)), Relator also claims unjust enrichment/mistake of fact and seeks a declaratory judgment finding the duplex liner to be a Subject Invention.

---

[4] Relator also alleges that TerraPower usurped "Generated Information," but even in light of the allegations by Relator, TerraPower, BEA, and DOE have no disagreements as to "Generated Information," which is consistent with page five of Exhibit F of the Relator's complaint, a Memorandum dated August 5, 2015.

C.    CRADAs

Under the CRADAs between TerraPower and BEA, a "Subject Invention" is "any invention of [TerraPower] conceived or first actually reduced to practice in the performance of work under the CRADA."  CRADA 24, Article I; *see also* DOE Order 483.1 A (Nov. 6, 2013); DOE Order 483.1 B (Dec. 20, 2016).  "Reduction to practice" means that the invention is constructed and tested sufficiently to determine that it will perform as contemplated.  *See Tech. Dev. Corp. v. United States*, 597 F.2d 733, 746–47 (Ct. Cl. 1979).  "Generated Information" means information produced in the performance of the CRADA.  CRADA 24, Article I.

The United States "retains a nonexclusive, nontransferable, irrevocable, paid-up license to practice or to have practiced for or on behalf of the United States every Subject Invention under th[e] CRADA throughout the world."  CRADA 24, Article XV.  The CRADAs require the parties to disclose Subject Inventions.  *See* CRADA 24, Article XI and XIV.

The CRADAs (a) provide that TerraPower may "elect to retain title" to any Subject Inventions made by its employees and (b) grant TerraPower the "first opportunity to file U.S. and foreign Patent applications" on any such Subject Invention.  *See* CRADA 24, Articles XV.A and XVI.A-B.  DOE may obtain title to or seek to patent a Subject Invention if both TerraPower and BEA decline to do so.  *Id.*  Notwithstanding, should a Subject Invention be patented by TerraPower, the United States retains its license in the Subject Invention.  CRADA 24, Art. XV.

Intellectual Property developed under the CRADA is subject to U.S. manufacturing requirements.  CRADA 24, Articles XXII.  "Intellectual Property" means "Patents, Trademarks, Copyrights, Mask Works, Protected CRADA Information, and other forms of comparable property rights protected by Federal Law and foreign counterparts, except trade secrets."  CRADA 24, Article I.  DOE may modify the manufacturing requirements, but only under

UNITED STATES' MEMORANDUM SUPPORTING MOTION TO DISMISS - 5

specific circumstances pursuant to DOE CRADA guidance. *See* CRADA 24, Article XXII; DOE Order 483.1 A (Nov. 6, 2013); DOE Order 483.1 B (Dec. 20, 2016).

Lastly, the CRADAs require the parties to attempt amicably to resolve any dispute arising under the CRADAs. CRADA 24, Article XXVIII. Judicial intervention is allowed only after good faith efforts have been unsuccessful or relief is necessary to prevent serious injury. *Id.*

D.    Duplex Liner

BEA and TerraPower entered into two CRADAs relating to nuclear fuels that may use duplex liners. Under the first CRADA, 11-CR-19 dated October 3, 2011, TerraPower received access to historical testing data to perform modeling. The second CRADA, CRADA 24, executed in July 2012, allowed TerraPower to work on fuel development and also experiment with different barrier coatings in the Idaho National Laboratory's Advanced Test Reactor.

TerraPower filed a provisional patent application for the duplex liner in December 2012. It then filed a nonprovisional application in March 2013 (No. US 20140185733 A1). The U.S. Patent and Trademark Office ("USPTO") rejected TerraPower's patent application in December 2015 because the invention as described in the claims of the application was indefinite, anticipated, and obvious over the existing prior art. TerraPower filed a Request for Continued Examination with the USPTO, but USPTO issued a final rejection of the patent application in August 2017. *See* USPTO Bibliographic Data for Application Number 13/794,633, attached as Exhibit A. TerraPower has filed a notice of appeal.[5]

The issue of the "Subject Invention" status of the duplex liner first arose in early 2014

---

[5] The application did not progress far enough in the review process for the USPTO to request a Section 2182 Statement or for DOE, *infra* at 12-13, to review the patent for potential Subject Invention designation under the Atomic Energy Act.

UNITED STATES' MEMORANDUM SUPPORTING MOTION TO DISMISS - 6

when TerraPower disclosed it as background intellectual property (i.e., not a Subject Invention) in the process of negotiating a new CRADA.  BEA and TerraPower then discussed the Subject Invention issue.  BEA asked TerraPower if it had filed patent applications for anything developed under a CRADA.  TerraPower responded no, which was consistent with TerraPower's consideration of the duplex-liner invention and patent application as being background intellectual property and not a Subject Invention.

In 2015, BEA and TerraPower discussed the specific issue of whether the duplex liner was a Subject Invention.  TerraPower took the position that the duplex liner was not conceived or first reduced to practice under the CRADA and provided supporting information to BEA.  BEA then conveyed the information to DOE.  In order to reduce administrative and litigation costs, DOE decided to defer the Subject Invention inquiry until after the conclusion of patent prosecution.  A Subject Invention inquiry is heavily fact-dependent and, if a patent is involved, may depend on the specific scope of the patent claims, which often change during patent prosecution and are not finalized until a patent, if any, is granted.  If a patent is not granted, then there would be no reason to pursue a Subject Invention inquiry or engage in litigation because the invention would not have sufficient value for the United States to pursue.  DOE also noted that it would have the opportunity to pursue the issue under USPTO supervision pursuant to 42 U.S.C. § 2182, if the application was placed in a condition for allowance into a patent.

E.    Generated Information

TerraPower, BEA, and DOE do not dispute the Generated Information under the CRADAs that Relator has referenced in the Complaint.  As indicated on page five of Exhibit F of the Relator's Complaint, a Memorandum dated August 5, 2015, TerraPower and BEA disagreed regarding the definition of Generated Information under the CRADAs.  But after discussions on

July 20, 2015, they resolved their disagreement and all parties (i.e., TerraPower, BEA, and DOE) agree on what is Generated Information under the CRADAs.

## II.    LEGAL AUTHORITY AND DISCUSSION

The False Claims Act is meant to protect the Federal Government from false claims and fraud that "result in financial loss to the Government." *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968). The Attorney General, 31 U.S.C. § 3729(a), or a private person "for the person and for the United States Government," 31 U.S.C. § 3729(b)(1), may bring False Claims Act suits. The private person is known as a "relator" and the suit filed by that person is known as a *qui tam* case. In a *qui tam* case, the United States may intervene or decline to intervene. 31 U.S.C. § 3729(b)(2), (4). In addition, the United States may dismiss a *qui tam* case "notwithstanding the objections of the [relator] if the [relator] has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A). The United States may move to dismiss whether or not it has intervened. *See United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.,* 151 F.3d 1139, 1145 (9th Cir. 1998); *United States v. Everglades Coll., Inc.*, 855 F.3d 1279, 1286 (11th Cir. 2017); *Ridenour v. Kaiser-Hill Co., L.L.C.*, 397 F.3d 925, 932-33 (10th Cir. 2005); *U.S. ex rel. Schweizer v. Oce N.V.*, 677 F.3d 1228, 1233 (D.C. Cir. 2012); *Swift v. United States*, 318 F.3d 250, 252 (D.C. Cir. 2003).

The United States may dismiss a nonmeritorious case. *See Sequoia Orange Co.,* 151 F.3d at 1144 (citing *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 753 (9th Cir. 1993)). The United States may also dismiss a meritorious case, even over a relator's objection, where "the government offers reasons for dismissal that are rationally related to legitimate government interest . . . ." *Id.* at 1147. "There is no requirement that the government prove conclusively

UNITED STATES' MEMORANDUM SUPPORTING MOTION TO DISMISS - 8

that, absent dismissal, the identified government interests will be adversely affected." *U.S. ex rel. Ridenour v. Kaiser-Hill Co., L.L.C.*, 174 F. Supp. 2d 1147, 1149 (D. Colo. 2001), *aff'd sub nom. Ridenour v. Kaiser-Hill Co., L.L.C.*, 397 F.3d 925 (10th Cir. 2005).

Congress gave the Government great authority over all aspects of *qui tam* lawsuits. *Sequoia Orange Co.*, 151 F.3d at 1144. The Government's burden when dismissing even a meritorious case is light. After all, the Government is the party in interest. *See id.* at 1145; *U.S. ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715, 720 (9th Cir. 1994). "[T]he decision to dismiss has been likened to a matter within the government's prosecutorial discretion in enforcing federal laws." *Id.* at 1143. The False Claims Act is intended to give the judiciary "only a limited check on prosecutorial discretion . . . ." *Id.* at 1144.

In *qui tam* cases, the Ninth Circuit acknowledges various reasons why dismissal may be rationally related to legitimate Government purposes or interests. Litigation costs and the burden on taxpayers from the litigation, even if the relator were to litigate the False Claims Act claims, are reasons for dismissal that are rationally related to a legitimate Government interest. *Sequoia Orange Co.*, 151 F.3d at 1146. Eliminating obstacles that interfere with an industry in which a United States agency is required by statute to "oversee orderly marketing processes" constitutes legitimate grounds for dismissal. *Id.* Similarly, the Ninth Circuit has found the Government's concern for the harm litigation may cause to an industry to be legitimate. *Id.*

Other courts have found that preventing the diversion of resources from an important Government prerogative to deal with *qui tam* litigation is a reason for dismissal. *Ridenour*, 397 F.3d at 937. Courts have also found that protecting classified information is a legitimate ground for dismissal. *Id.* at 936. The Eleventh Circuit recently stated, in the context of settlement, that

> the government's interests are not confined to maximizing recovery against the defendant. The United States may want to consider whether the maximum

UNITED STATES' MEMORANDUM SUPPORTING MOTION TO DISMISS - 9

recovery is proportional to the seriousness of the misconduct.  It may also wish to consider public policy consequences or political ramifications.  Moreover, it could conclude that limited prosecutorial resources are not worth spending on continued monitoring of the case, which it often must do even when the relator is proceeding with the action.

*United States v. Everglades Coll., Inc.*, 855 F.3d 1279, 1288 (11th Cir. 2017).  The Eleventh Circuit notes that courts owe "considerable deference to [the Government's] settlement rationale . . . ."  *Id.*  While the Eleventh Circuit discussed deference in the context of settlement, it is analogous to dismissal, as recognized by the Eleventh Circuit in its analysis.  *Id.* at 1286.  In addition, the Eleventh Circuit recognizes that judicial scrutiny of dismissal under the False Claims Act is lower than that of settlement.  *See id.* at 1288.

In sum, the Government may weigh the potential benefits of the lawsuit against the perceived benefits of terminating the suit.  *Ridenour*, 397 F.3d at 940; *see also Swift*, 318 F.3d at 254 ("The asserted governmental interests were that the dollar recovery was not large enough to warrant expending resources monitoring the case, complying with discovery requests, and so forth, and that spending time and effort on this case would divert scarce resources from more significant cases. Although Swift believes that the costs would be relatively small, the government's goal of minimizing its expenses is still a legitimate objective, and dismissal of the suit furthered that objective.").

The U.S. District Court for the Eastern District of California has stated that "[g]ood cause for . . . dismissal depends on the particular circumstances of each case, and relevant matters may include the relative merits of the action, the interest of the *qui tam* plaintiff, the purposes underlying the False Claims Act, and the potential waste of government resources."  *United States v. Shasta Servs., Inc.*, 440 F. Supp. 2d 1108, 1111 (E.D. Cal. 2006).  Thus, lack of merit provides good cause for dismissal.  *Id.* at 1113.  In addition, when the Government has knowledge of the circumstances and chooses a particular course of action that does not condemn

UNITED STATES' MEMORANDUM SUPPORTING MOTION TO DISMISS - 10

the actions, a relator should not be able to second guess and create a False Claims Act case. *See id.* ("there cannot be a knowing presentation of a false claim for payment where the government is fully aware of the facts surrounding the claim and approves it"); *see also U.S. ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 544-45 (7th Cir. 1999) ("The government's prior knowledge of an allegedly false claim can vitiate a FCA action.").

If a relator objects and the United States identifies a valid Government purpose and a rational relationship between dismissal and accomplishing that legitimate purpose, the relator has the burden "to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal." *Sequoia Orange Co.,* 151 F.3d at 1145. A relator must negate "every conceivable basis that could support the government's decision to dismiss." *Ridenour*, 174 F. Supp. 2d at 1150. A hearing is only appropriate when the relator offers a colorable claim of these allegations. *Sequoia Orange Co.*, 151 F.3d at 1145. Further, the deliberative process privilege applies. *Ridenour*, 397 F.3d at 939; *Swift*, 318 F.3d at 254 ("the Supreme Court has stated that a party is not entitled to discovery of information relating to prosecutorial decisions absent a substantial threshold showing").

Here, the United States seeks dismissal of this *qui tam* action (except for the retaliation claim) because continued litigation is counter to the Government's interests. The Government has lost no rights to "property" because of the Atomic Energy Act and rights under the CRADAs; and the Government has not been damaged. Furthermore, the case lacks merit. Relator fails to allege a viable False Claims Act case, which is pertinent to the Government's decision that allowing Relator to proceed in this case is contrary to its interests.

A.  Allowing this Case to Proceed is Contrary to the United States' Interests

Continued litigation is contrary to the interests of the United States. Therefore, Relator's

UNITED STATES' MEMORANDUM SUPPORTING MOTION TO DISMISS - 11

Complaint should be dismissed (except for the retaliation claim), even over Relator's objection, because dismissal is rationally related to legitimate Government interests. *See Sequoia Orange Co.,* 151 F.3d at 1147. The Government has determined that the benefits of terminating the suit outweigh any benefits of allowing it to go forward. *See Ridenour*, 397 F.3d at 940.

      1.      No Loss of Rights and No Damage

The United States, at present, has lost no rights to property or to the ability to assert rights in property. The Government's Subject Invention inquiry is still pending in light of ongoing patent prosecution. The USPTO has twice rejected TerraPower's patent application, which is now on appeal.

Further, and importantly, the United States' intellectual property rights under the Atomic Energy Act, 42 U.S.C. § 2182, and the CRADAs, are currently unimpaired. The Atomic Energy Act contains provisions governing the handling of patent applications for nuclear or atomic inventions "made or conceived of in the course of or under any contract, subcontract, or arrangement entered into with or for the benefit of [DOE]." 42 U.S.C. § 2182. The procedures ensure that the DOE has an opportunity to assert any federal rights in an invention before the USPTO issues a patent to a private party.

Under 42 U.S.C. § 2182, "no patent for any invention . . . useful in the production or utilization of special nuclear or atomic energy shall be issued" unless the applicant provides "a statement under oath setting forth the full facts surrounding the making or conception of the invention or discovery described in the application" (a "Section 2182 Statement"). Procedurally, upon receiving a patent application for a nuclear invention, the USPTO conducts a substantive review of the application. Once the USPTO determines that the patent application is "in condition for allowance," the USPTO ensures that a Section 2182 Statement has been provided

by the applicant.[6]  Then, the USPTO forwards the patent application and the Section 2182

Statement to DOE.  DOE has ninety days to advise the USPTO whether to issue the patent to the

United States rather than to the applicant.  If DOE agrees or does not respond, the patent will

issue to the applicant.

Here, should the USPTO grant a patent for the duplex liner, it will notify DOE.  42

U.S.C. § 2182.  DOE will then have an opportunity to assert rights to the invention.  *Id.*  DOE

may request that the patent be issued to DOE instead of TerraPower.  *Id.*  Moreover, under the

CRADAs, DOE may complete its Subject Invention inquiry and assert its intellectual property

and contract rights.  CRADA 24 is still in effect and will be until 2023.

While Relator alleges great value in the designation of the duplex liner as a Subject

Invention, such designation alone does not create definitive monetary value.  Value often

depends on whether the invention, by means of an issued patent, can be protected by excluding

others from making, using, or selling the invention.  Having a Government license in an

invention, which cannot be patented, does not have much value, if any.  Thus far, the USPTO has

determined upon multiple reviews that the duplex liner invention is not patentable.

As for U.S. manufacturing, whether the duplex liner is a Subject Invention has not been

determined, and moreover, TerraPower is not currently manufacturing the duplex liner.  Thus, at

present, manufacturing requirements under the CRADA have not been violated.

Consequently, the United States has presently not been damaged.  In addition, the

Government has lost no right to claim an interest in the duplex liner as a Subject Invention or an

interest in other Subject Inventions of TerraPower if it so chooses.  Relator seeks to require the

---

[6] https://www.uspto.gov/web/offices/pac/mpep/s150.html

UNITED STATES' MEMORANDUM SUPPORTING MOTION TO DISMISS - 13

United States immediately to assert its rights.  But DOE was aware of the situation well before the Complaint and is not interested in asserting its rights at this time.  In the present circumstances, asserting rights and perhaps litigating the issue is a waste of Government resources.  DOE has already made the decision to postpone the fact-intensive inquiry of deciding whether the duplex liner invention is a Subject Invention to conserve resources and not engage in civil litigation until the precise nature and scope of a patented invention, if granted, is known.

2.      Government Time and Resources

Litigation under the Complaint will waste substantial Government time and resources. Failure to dismiss will impose unnecessary cost and burden on the Government from monitoring and involvement in the case were the Relator to litigate the case.  *See Sequoia Orange Co.,* 151 F.3d at 1146.  Even declining intervention will waste resources because the United States (both the Department of Justice and the Department of Energy) will have to continue to monitor this case.  There may be discovery requests that waste time and resources of various agencies. Discovery requests may inappropriately target internal Government decision-making processes.

Moreover, BEA will likely seek to receive reimbursement from DOE of certain legal expenses to which it may be entitled.  The Federal Acquisition Regulations and BEA's contract with DOE provide for costs incurred in successfully defending False Claims Act *qui tam* cases. Contract § I.38; 48 C.F.R. § 970.5228-1.  In the False Claims Act context, the Government may reimburse BEA up to eighty percent of the costs if the Government does not intervene and BEA successfully defends the case.  INL Contract § I.54, 10 C.F.R. § 719.40, 48 CFR 31.205-47(c)-(e).  Thus, allowing Relator to proceed against BEA will likely cost the United States money even if Relator's claims are not successful.

Lastly, given that Relator's theories reflect misconceptions about the provisions of the CRADAs and the Atomic Energy Act, it is likely that the United States would need to file

UNITED STATES' MEMORANDUM SUPPORTING MOTION TO DISMISS - 14

statements of interest to aid the Court's deliberations.

3.      Dismissal Prevents Possible Harm to Public/Private Collaboration

DOE has a mission to work with private sector partners like TerraPower to develop nuclear and other technologies. *See* 48 C.F.R. § 970.5227-3. This litigation will likely impair or delay work being done with TerraPower. Even if TerraPower prevails, this lawsuit will be costly to defend and may dissuade TerraPower and others from working with DOE National Laboratories in the future. Dismissal will prevent future harm to the overall collaboration between private party and Government in nuclear energy research occurring at National Laboratories because this dismissal will be seen to reduce the obstacles (including perceived obstacles) and risks of working with the labs. *Cf. Sequoia Orange Co.,* 151 F.3d at 1146.

4.      Dismissal Prevents Citizen-Mandated Declaratory Relief

The Complaint, especially Relator's "declaratory judgment" claim, is contrary to the United States' interests because it seeks a judicial determination of property rights over the duplex liner that are appropriately reserved for the DOE to assert. Well before the Complaint was filed, DOE became aware of the facts and circumstances and concluded that it was premature to conduct a full Subject Invention inquiry under the circumstances while patent prosecution was ongoing. *See supra* at 8. Relator's attempt to force DOE to make a determination is contrary to the interests of the United States because it usurps DOE's power to determine when and how it will assert its rights. In addition, it forces DOE to assert its rights in a manner DOE deems inefficient.

5.      No Viable False Claims Act Case

Relator fails to allege a viable False Claims Act case. Relator's assertions and theory suffer from various defects. Generally, Relator's claims are premature and represent a fundamental misunderstanding of the patent process for nuclear inventions under the CRADAs

UNITED STATES' MEMORANDUM SUPPORTING MOTION TO DISMISS - 15

and the Atomic Energy Act, and the Government's rights in the process.  In sum, the

Government has lost no rights at this point, so there cannot be False Claims Act liability.

### a.    False Claims Act Provisions

The False Claims Act provides for liability against "any person who":

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

> (C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);

> (D) has possession, custody, or control of property . . . used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that . . . property;

> * * *

> (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to . . . transmit . . . property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to . . . transmit . . . property to the Government[.]

31 U.S.C. § 3729(a)(1).  The person "is liable to the United States . . . for a civil penalty

. . . , plus 3 times the amount of damages which the Government sustains . . . ." *Id.*

### b.    No "Claim for Payment or Approval"

Relator alleges liability under many subsections of the False Claims Act, 31 U.S.C.

§ 3729(a)(1).  However, the first two types of conduct creating False Claims Act liability (i.e., 31

U.S.C. § 3729(a)(1)(A) and (B)) do not apply because there is no "claim for payment or

approval." "[T]he term 'claim'. . . means any request or demand, whether under a contract or

otherwise, for money or property . . . ." 31 U.S.C. § 3729(b)(2).  Neither BEA nor TerraPower

requested or demanded money or property.  Thus, § 3729(a)(1)(A) and (B) do not apply.

### c.    No Failure to Deliver Property or Concealment of Property

Claims arising under 31 U.S.C. § 3729 (a)(1)(D) (knowing failure to deliver "property" to the Government) or (a)(1)(G) (knowing false statements to conceal an "obligation . . . to transmit property" to the Government)[7] are thus left to consider.  Even considering these two False Claims Act theories of liability—in addition to (a)(1)(A) and (B) False Claims Act liability—the assertions by Relator do not give rise to plausible False Claims Act liability.

As a threshold matter, the intellectual property rights at issue must be "property" for purposes of the False Claims Act.[8]  Notwithstanding whether Subject Inventions are "property" for purposes of the False Claims Act, Relator's claims suffer from a number of defects.

First, TerraPower and BEA's disclosure to DOE about the situation with the duplex liner and the potential Subject Invention, and then DOE's decision to delay action, weighs contrary to an FCA claim.  *See U.S. ex rel. Butler v. Hughes Helicopters, Inc.*, 71 F.3d 321, 327 (9th Cir. 1995) (cooperation and disclosure by a defendant to the Government may contradict the "knowledge" requirement).  As described in detail above, DOE became aware of the situation in 2015, before Relator filed his Complaint.  DOE decided to defer any decision as to whether the duplex liner was a Subject Invention under the CRADA because DOE did not perceive sufficient value unless the duplex liner successfully made it through the patent process.  However, Relator's Complaint seeks to make DOE decide the issue before it believes it is necessary.

Second, a False Claims Act theory may be foreclosed when there is a good faith dispute as to the proper interpretation of a legal provision.  *See Hagood v. Sonoma County Water*

---

[7] "[T]the term 'obligation' means an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, . . . from statute or regulation, or from the retention of any overpayment . . . ."  31 U.S.C. § 3729(b)(3)

[8] The United States has identified no case law addressing whether intellectual property rights may constitute "property" for purposes of (a)(1)(D) or (a)(1)(G), but due to other defects in the Complaint it is not necessary to resolve that issue here.

UNITED STATES' MEMORANDUM SUPPORTING MOTION TO DISMISS - 17

*Agency*, 81 F.3d 1465, 1477 (9th Cir. 1996); *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 377 (4th Cir. 2008). "The 'knowingly' element of an FCA claim provides the requisite degree of scienter and carries forth Congress's intent that the FCA does not punish 'honest mistakes or incorrect claims submitted through mere negligence.'" *U.S. ex rel. Putnam v. E. Idaho Reg'l Med. Ctr.*, 696 F. Supp. 2d 1190, 1201 (D. Idaho 2010) (quoting *United States ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1073 (9th Cir. 1998)). Acting on a good faith interpretation of a regulation or law forecloses the satisfaction of the scienter requirement under the False Claims Act. *See id.* ("A defendant can avoid liability under § 3729(a)(1) if the defendant acted in reliance on a good faith interpretation of a regulation . . . because the good faith nature of his or her action forecloses the possibility that the scienter requirement is met." (internal quotation marks omitted)); *United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 437 (6th Cir. 2016) ("[e]stablishing knowledge under FCA provisions that use knowledge as scienter requires plaintiffs to prove that the defendant knows ... that [he] violated a[n] ... obligation, not simply that he mistakenly interpreted a legal obligation") (quotation marks omitted and modifications in original).

Whether an invention is a Subject Invention requires that the invention be conceived or first actually reduced to practice, which are fact-intensive questions. *See Tech. Dev. Corp. v. United States*, 597 F.2d 733, 747 (Ct. Cl. 1979) ("The proof of conception and/or reduction to practice is a heavy one for either party and requires more than self-serving testimony or uncorroborated records and documents."). There is no bright-line rule. Based on information that BEA and TerraPower provided to DOE in 2015, and through investigation of this *qui tam* action, there may be disagreement over whether the duplex liner is a Subject Invention. TerraPower has performed some work and testing on the duplex liner outside of INL, which it

UNITED STATES' MEMORANDUM SUPPORTING MOTION TO DISMISS - 18

might assert is enough to mean that the duplex liner was conceived and actually reduced to practice for the first time outside of a CRADA.

Third, Relator alleges that TerraPower plans to violate the provision of the CRADA related to manufacturing in the United States.  These allegations do not further a cognizable False Claims Act case.  First, they assume there is a Subject Invention.  Second, TerraPower is not currently manufacturing the duplex liner.  Thus, at this stage, manufacturing requirements of the CRADA have not been violated.  Any claim related to U.S. manufacturing is premature.

B.      The United States Has Received Substantial Benefits

Even if the Complaint were to present a plausible theory of False Claims Act liability, the United States has suffered no injury.  The intended benefit to the United States of the CRADAs is the advancement of nuclear technology and access to the research, equipment, and funds contributed by TerraPower under the CRADA.  The United States is receiving all of these benefits.  This is why the United States encourages its National Laboratories to engage in CRADAs and provides in-kind benefits to CRADA participants.

C.      Relator's Federal Common Law Claims Are Meritless

The Complaint purports to allege federal common law claims for "unjust enrichment/mistake of fact" and "declaratory judgment."  In addition to the deficiencies in Relator's False Claims Act allegations outlined above, Relator lacks the authority to bring non-False Claims Act causes of action on behalf of the United States.  *U.S. ex rel. Fortenberry v. Holloway Grp., Inc.*, 515 B.R. 827, 830 (W.D. Okla. 2014) ("A relator in a *qui tam* FCA action does not have standing to assert common law claims based upon injury sustained by the United States." (quoting *U.S. ex rel. Rockefeller v. Westinghouse Elec. Co.*, 274 F. Supp. 2d 10, 14 (D.D.C. 2003)).  Moreover, the declaratory judgment statute cited by Relator provides that a

federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. The United States, the party in interest, is not seeking such declaration. A third party may not do so on its behalf.

## III.    CONCLUSION

Relator's Complaint should be dismissed, except for cause of action eight, which is an individual claim. Dismissal should be over Relator's objection, if any. The potential benefits from dismissal outweigh any benefits to the Government from continuing the case. This is especially true considering that the Government has lost no rights to property and suffered no damage. DOE assessed the situation well before the Complaint was filed and determined that it was not in the Government's interests to resolve the question of the duplex liner's status as a Subject Invention. It makes sense to do so if and when the patent process proceeds. In addition, the Government seeks to save resources and prevent the expenditure of taxpayer funds to reimburse a Defendant, BEA (the operating contractor of Idaho National Laboratory), to defend a case in which the United States itself is the party in interest and in which the United States believes is a weak or meritless suit. Lastly, the Government seeks to dismiss this case to prevent unnecessary barriers (and perceived barriers) to working with National Laboratories. In sum, the False Claims Act is meant to protect the Federal Government from fraudulent activity that deprives it of money or property. This case does not further that purpose.

DATED this 20th day of November, 2017.

> BART M. DAVIS
> United States Attorney
> By
>
> /s/ William M. Humphries
> WILLIAM M. HUMPHRIES
> Assistant United States Attorney

CERTIFICATE OF SERVICE

Pursuant to 31 U.S.C. § 3730(c)(2)(A), I hereby certify that on November 20th, 2017, the

foregoing **UNITED STATES' MEMORANDUM IN SUPPORT OF ITS MOTION TO**

**DISMISS RELATOR'S COMPLAINT** was electronically filed with the Clerk of the Court

using the CM/ECF system which sent a Notice of Electronic Filing to the following person(s):

N/A


And, I hereby certify that the following listed non-registered CM/ECF participants were

served by United States mail, postage prepaid and via email:


Nathan M. Olsen
Petersen Moss Hall & Olsen
485 "E" Street
Idaho Falls, ID 83402
nolsen@pmholaw.com
Attorney for Relator


/s/ William M. Humphries
William M. Humphries
Assistant United States Attorney