UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE UNITED STATES OF AMERICA, *ex rel.* DOUGLAS V. TOOMER,<br><br>Plaintiff,<br><br>v.<br><br>TERRAPOWER, LLC and BATTELLE ENERGY ALLIANCE, LLC,<br><br>Defendants. | Case No. 4:16-cv-00226-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

This is a False Claims Act ("FCA") case. As is typical in FCA cases, an individual, Douglas Toomer ("Toomer"), has asserted FCA claims against Defendants TerraPower, LLC ("TerraPower") and Battelle Energy Alliance, LLC ("BEA") on behalf of the United States government. As required by the FCA, Toomer has only served the Complaint on the government. The FCA does not permit Toomer to serve the Complaint on the Defendants until the government decides what course of action to take. Usually, the government chooses to either intervene or permit the whistleblower to proceed on his own. In this case, the government has moved for dismissal. That motion is currently pending before the Court (Dkt. 14), as is Toomer's Motion for an Evidentiary Hearing and to Unseal the Case. Dkt. 23.

The Court heard oral argument on these Motions on September 13, 2018. For the reasons outlined below, the Court GRANTS the Motion to Dismiss and DISMISSES all claims except Toomer's retaliation claim. The Court also DENIES in PART and GRANTS in PART Toomer's Motion for an Evidentiary Hearing and to Unseal the Case. While the Court will not hold an evidentiary hearing, it will unseal the case.

## II. BACKGROUND

The United States Department of Energy ("DOE") owns Idaho National Laboratory ("INL"), which is located in Idaho Falls, Idaho. INL is a Federally Funded Research and Development Center operated under Federal Acquisition Regulation Part 35. *See* 48 C.F.R. § 35.000 *et seq.* INL conducts nuclear energy research and development.

BEA is the management and operating contractor of INL, as laid out in government contract number DE-AC07-05ID14517 ("the Management Contract"). DOE acquisition regulations require that management and operating contractors be legal entities created for the purpose of "performing a specific management and operating contract." 48 C.F.R. § 970.0970-1. BEA was formed for the purpose of performing the Management Contract.

Toomer is the "relator" in this FCA case. Toomer worked for BEA during the relevant timeframe as a Relationship Manager. One of his major responsibilities was to work with TerraPower.

TerraPower is a private company that focuses on nuclear energy and science innovation. In September 2011, and then again in July 2012, TerraPower entered into

MEMORANDUM DECISION AND ORDER- 2

Cooperative Research and Development Agreements ("CRADA")[1] with BEA for work at the INL.

The CRADAs contain a multitude of contractual obligations for both BEA and TerraPower. Significant to this litigation are the obligations surrounding "Subject Invention[s]," which the CRADAs define as "any invention of [BEA] or [TerraPower] conceived or first actually reduced to practice in the performance of work under th[e] CRADA." Dkt. 1-3, at 2. The parties are required to disclose to the government any and all Subject Inventions. *Id.* at 8, 10. However, BEA or TerraPower may still "elect to retain title" to any Subject Inventions made by its employees and the "Inventing Party" has the "first opportunity to file U.S. and foreign Patent applications" on any Subject Inventions. *Id.* at 10, 11. Nevertheless, the United States "retains a nonexclusive, nontransferable, irrevocable, paid-up license to practice or to have practiced for or on behalf of the United States every Subject Invention . . . throughout the world." *Id.* at 10. DOE may obtain title to or seek to patent a Subject Invention only if the Inventing Party declines to do so. *Id.*

---

[1] A CRADA is a statutory creation defined as:

> [A]ny agreement between one or more Federal laboratories and one or more non-Federal parties under which the Government, through its laboratories, provides personnel, services, facilities, equipment, intellectual property, or other resources with or without reimbursement (but not funds to non-Federal parties) and the non-Federal parties provide funds, personnel, services, facilities, equipment, intellectual property, or other resources toward the conduct of specified research or development efforts which are consistent with the missions of the laboratory.

15 U.S.C.A. § 3710a(d)(1).

MEMORANDUM DECISION AND ORDER- 3

The CRADAs also contain obligations regarding "Generated Information," defined as "information produced in the performance of [a] CRADA." *Id.* at 2. The CRADAs state that the parties "have no obligations of nondisclosure or limitations on their use of, and the Government shall have unlimited rights in, all Generated Information produced and information provided by the Parties," with certain exceptions including information that has been properly marked as "Protected CRADA Information." *Id.* at 7.

Each CRADA contains a "Statement of Work" describing the purpose and objectives of the CRADA. The 2011 CRADA involved "the development and testing of metallic fuel irradiation behavior, fabrication and fast reactor structural materials, all related to nuclear energy." Dkt. 10, at 7. The 2012 CRADA "allow[ed] for the further development and irradiation testing of variants of 'barrier coatings' in nuclear fuel rods." *Id.* at 8. The 2012 CRADA committed DOE to over $17 million in in-kind contributions. *Id.* In August 2014, BEA entered into a modification of the 2012 CRADA that committed DOE to an additional $5.6 million. *Id.*

Toomer alleges that TerraPower developed a "duplex liner" (also called a "barrier coating")[2] under the 2012 CRADA (thus making it a "Subject Invention") and failed to disclose it to the government as required by the 2012 CRADA. Toomer further alleges that TerraPower applied for a patent for the duplex liner and, in the application, failed to

---

[2] Toomer asserts the Subject Inventions may eliminate or substantially reduce the failure of nuclear fuel rods—which he estimates could save nuclear fuel producers hundreds of millions of dollars.

MEMORANDUM DECISION AND ORDER- 4

provide a sworn statement discussing the relation of the invention to a CRADA as required under 42 U.S.C. § 2182.

TerraPower filed a provisional patent application for the duplex liner in December 2012. It then filed a nonprovisional application in March 2013. The U.S. Patent and Trademark Office ("USPTO") rejected TerraPower's patent application in December 2015. TerraPower filed a Request for Continued Examination with the USPTO, but the USPTO issued a final rejection of the patent application in August 2017. TerraPower has filed a notice of appeal.

Toomer also alleges that TerraPower improperly claimed some key Generated Information associated with the CRADA and the Subject Inventions was proprietary information. Finally, Toomer maintains that TerraPower concealed the duplex liner so that it could manufacture and market the invention outside of the United States, in direct violation of the 2012 CRADA.

The status of the duplex liner first became an issue in early 2014, when TerraPower disclosed the duplex liner as "background intellectual property," not a Subject Invention, in the process of negotiating a new CRADA. BEA investigated the development of the duplex liner and TerraPower provided information on its development that supported its position that the duplex liner was not a Subject Invention. BEA forwarded this material to DOE.

According to Toomer, BEA determined that the duplex liner was a Subject Invention and TerraPower's claimed proprietary information was in fact Generated Information that was not proprietary. BEA informed TerraPower of these findings;

MEMORANDUM DECISION AND ORDER- 5

TerraPower, in turn, maintained its position that the duplex liner was not a Subject Invention and the at-issue information was proprietary. BEA prepared a white paper on the dispute, but did not recommend that any specific action be taken.

According to the government, DOE was aware of this dispute all along and decided to defer its Subject Invention inquiry until after the conclusion of the patent prosecution of the duplex liner because the outcome of those proceedings would affect the inquiry.

Toomer was involved in BEA's investigation of the duplex liner and took steps to notify BEA and TerraPower of TerraPower's alleged violations of the CRADA and to take corrective measures. Dkt. 10, at 14. According to Toomer, "Terrapower became increasingly upset with Toomer's efforts" and "applied pressure to Toomer's senior management at BEA to back off and change its position on the matter, and also have Toomer removed from any involvement with TerraPower and the CRADAs." *Id.* TerraPower was successful in these endeavors. *Id.* Still, Toomer "insisted that BEA formally request that DOE become involved in the matter." *Id.* at 15. BEA's legal counsel and management allegedly became hostile towards Toomer. They "stripped [him] of all of his responsibilities and effectively told [him] to 'find work elsewhere' at BEA." *Id.* Toomer claims that he became "isolated from management and his co-workers and suffered humiliation, very high emotional anxiety and distress, leading to illness and high blood pressure." *Id.* Toomer left BEA in May 2016 because of this hostile work environment. *Id.*

Toomer filed his Complaint in this case in June 2016. He then filed an Amended Complaint in February 2017, asserting eight claims: (1) presentation of false claims in violation of the FCA; (2) making or using false records or statements in violation of the FCA; (3) failure to deliver possession of property in violation of the FCA; (4) concealing or avoiding obligations to the government in violation of the FCA; (5) conspiring to commit violations of the FCA; (6) declaratory judgment; (7) unjust enrichment/mistake of fact; and (8) unlawful employment retaliation.

The government requested several extensions, which the Court granted, to determine whether it should elect to intervene in the case. Ultimately, the government moved to dismiss the case. Dkt. 14. In response, Toomer objected to the Motion to Dismiss, requested a hearing, and requested that the Court unseal the case. Dkt. 23.

### III. APPLICABLE LAW

The Ninth Circuit has succinctly described the structure of an FCA case as follows:

> Under the False Claims Act, any person who defrauds the United States Government is liable for civil penalties. 31 U.S.C. § 3729 (1994). Although the FCA requires the Attorney General to investigate possible violations, *id.* § 3730(a), the FCA also permits civil qui tam actions by private persons, known as relators, *id.* § 3730(b). In a qui tam action, the relator sues on behalf of the government as well as himself. If the relator prevails, he receives a percentage of the recovery, with the remainder being paid to the government.

*U.S. ex rel. Biddle v. Bd. of Trustees of Leland Stanford, Jr. Univ.*, 161 F.3d 533, 535 (9th Cir. 1998). "Two of the primary purposes of the FCA are to alert the government as early as possible to fraud that is being committed against it and to encourage insiders to come forward with such information where they would otherwise have little incentive to do

MEMORANDUM DECISION AND ORDER- 7

so." *Id.* at 538. After a qui tam action has been filed, the government may elect to "(1) intervene in such an action and take over its prosecution, 31 U.S.C. § 3730(b)(2); (2) 'pursue its claim through any alternate remedy available to the Government,' instead, *id.* § 3730(c)(5); or (3) decide not to take any action, allowing the private individual, . . . to pursue the claim to completion, *id.* § 3730(c)(3)." *United States v. Sprint Commc'ns, Inc.*, 855 F.3d 985, 988 (9th Cir. 2017). The government may also move to dismiss the action, "notwithstanding the relator's objection, if the relator is afforded notice and a hearing." *U.S. ex rel., Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1143 (9th Cir. 1998) (citing 31 U.S.C. § 3730(c)(2)(A)).

To obtain a dismissal of a qui tam action, the government must (1) identify a valid government purpose for the dismissal; and (2) demonstrate a rational relation between dismissal and accomplishment of the purpose. *Sequoia Orange*, 151 F.3d, at 1145; *see also U.S. ex rel. Mateski v. Mateski*, 634 F. App'x 192, 193 (9th Cir. 2015). "If the government satisfies the two-step test, the burden switches to the relator 'to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal.'" *Sequoia Orange*, 151 F.3d at 1143 (citation omitted). "[T]he decision to dismiss has been likened to a matter within the government's prosecutorial discretion in enforcing federal laws." *Id.*

## IV. ANALYSIS

### A. FCA Claims

#### 1. Government's Reasons for Dismissal

The government asserts that continued litigation is contrary to its interests because it has determined that the benefits of terminating the suit outweigh any benefits of

MEMORANDUM DECISION AND ORDER- 8

allowing it to go forward. The government asserts four specific rationales in support of this position.

First, the government asserts it has not yet lost any property rights and has not yet suffered any damages because of the Defendants' actions. TerraPower has yet to obtain a patent on the duplex liner (the USPTO having twice rejected its application), and the government has deemed it unfruitful to conduct a Subject Invention inquiry before this patent prosecution is finalized. The 2012 CRADA remains in effect until 2023, so the government has plenty of time remaining to conduct this inquiry (and then sue under the FCA if appropriate). Moreover, under the Atomic Energy Act, 42 U.S.C. § 2182, if the USPTO were to determine that TerraPower's patent application is "in condition for allowance," the USPTO would forward the patent application to the DOE, and the DOE would have ninety days to advise the USPTO whether to issue the patent to the United States or to TerraPower. The government further explains that whether the duplex liner is patentable is, in effect, the decisive factor in whether it suffers any damages. If the duplex liner is not patentable, the government asserts it will suffer little, if any, monetary loss from not having the explicit license to use the duplex liner that comes with Subject Invention status as TerraPower will not be able to restrict *anyone's* use of the duplex liner. The government also argues that, not only has it not yet lost any property rights, but this suit usurps DOE's power to determine when and how it will assert its property rights. Indeed, Claim Six seeks a declaration "defining and protecting the Subject Invention and Generated Information."

MEMORANDUM DECISION AND ORDER- 9

Second, the government maintains that continued litigation will waste substantial government time and resources. Even if the government does not intervene, both DOE and the Department of Justice will have to continue to monitor the case. The government also predicts DOE employees will have to provide affidavits or other statements in the case because of DOE's close involvement in this ongoing dispute. In addition, the government expects BEA will likely seek reimbursement from DOE for certain legal expenses to which it may be entitled under its Management Contract and under the Federal Acquisition Regulations.[3] The government asserts that if TerraPower does not obtain a patent in the duplex liner, these costs are too high to justify litigating whether the duplex liner is, or is not, a Subject Invention.

Third, the government asserts continued litigation will impair or delay work DOE is conducting with BEA and TerraPower. In addition, the government fears this suit will discourage TerraPower and other private companies from working collaboratively with DOE in the future.

Fourth, the government argues Toomer has failed to state viable FCA claims. However, even if Toomer's FCA claims are viable, the Court may still grant the government's Motion to Dismiss. As such, the Court need not address the viability of Toomer's FCA claims at this time.

Toomer argues that "fostering public/private collaboration or saving government time and resources is not a legitimate purpose or interest of government at the expense of

---

[3] BEA may be entitled to up to eighty percent of its costs if the government does not intervene and BEA successfully defends the suit.

violations of the law and harms to the taxpayer." Toomer continually asserts that the proposed dismissal "subverts" the intent and purpose of the FCA and asks the Court to "look the other way" and allow Defendants to continue to engage in fraudulent behavior. In essence, Toomer disagrees with the government's priorities. This disagreement is insufficient to establish that the government's reasons for seeking dismissal are invalid. Certainly, dismissal does not directly serve the mission of the FCA, but the FCA does not require the government to prosecute (or allow others to prosecute) potential FCA violations at all cost. Rather, as stated previously, "[t]wo of the primary purposes of the FCA are to alert the government as early as possible to fraud that is being committed against it and to encourage insiders to come forward with such information where they would otherwise have little incentive to do so." *Biddle*, 161 F.3d at 538. These two purposes have been achieved in this case. The government is aware of the possible fraud and Toomer was able to come forward with his concerns. With these two goals achieved, the government need not continue to endure litigation costs and other harms (such as the erosion of public-private partnerships) when its sees the litigation as cost-prohibitive.

The Ninth Circuit, as well as other courts, have acknowledged that litigation costs represent a valid governmental interest, even if the government concedes that the case has merit. *See Sequoia Orange Co.*, 151 F.3d at 1146 (holding that the district court "properly noted that the government can legitimately consider the burden imposed on the taxpayers by its litigation, and that, even if the relators were to litigate the FCA claims, the government would continue to incur enormous internal staff costs"); *see also Swift v. United States*, 318 F.3d 250, 254 (D.D.C. 2003) (explaining that "the government's goal

MEMORANDUM DECISION AND ORDER- 11

of minimizing its expenses is still a legitimate objective, and dismissal of the suit furthered that objective"); *Nasuti ex rel. U.S. v. Savage Farms, Inc.*, No. CIV.A. 12-30121-GAO, 2014 WL 1327015, at *11 (D. Mass. Mar. 27, 2014), *aff'd sub nom. Nasuti v. Savage Farms Inc.*, No. 14-1362, 2015 WL 9598315 (1st Cir. Mar. 12, 2015). For these reasons, the Court finds that the government has met its burden of establishing (1) a valid government purpose for the dismissal; and (2) a rational relation between dismissal and accomplishment of that purpose.

### 2. Whether the Government's Reasons for Dismissal are Fraudulent, Arbitrary and Capricious, or Illegal

At this stage, the burden shifts to Toomer to show "that dismissal is fraudulent, arbitrary and capricious, or illegal." *Sequoia Orange*, 151 F.3d at 1143 (citation omitted). Toomer raises two arguments in an attempt to meet this burden. First, he argues that dismissal is unreasonable in light of evidence that the government has not fully investigated his allegations. Second, he speculates that the government's decision to dismiss is based on arbitrary and improper considerations. Toomer asks for leave to conduct discovery to determine the allegedly improper considerations and asks for an evidentiary hearing to present the evidence he discovers. Neither of these arguments is persuasive.

First, the FCA does not require the government to "fully investigate" an alleged FCA violation before moving to dismiss, and the government's investigation in this case was adequate. The United States Attorney's Office in conjunction with the DOE Office of Inspector General: "(1) met with Relator and his counsel two times; (2) obtained and

MEMORANDUM DECISION AND ORDER- 12

reviewed emails, notes, and other documents provided by the defendants, DOE, and Relator; (3) toured the INL facility and specifically toured the facilities related to and partially funded by TerraPower; (4) met with BEA and TerraPower personnel involved in the INL projects; and (5) discussed the allegations raised by Relator with various DOE personnel (including intellectual property counsel)." Dkt. 29, at 9. The Court finds such an investigation sufficient under the circumstances.

Second, Toomer's request to conduct discovery to determine if the government investigated thoroughly or if it considered improper factors when making its decision to seek dismissal, appears to be little more than a proposed fishing expedition. Toomer has only speculated that the government considered arbitrary or improper factors in moving for dismissal. Allowing Toomer to go on a fishing expedition to find support for his speculations "is generally antithetical to the government's prerogative to end a qui tam case brought in its own name." *United States v. Everglades Coll., Inc.*, 855 F.3d 1279, 1291 (11th Cir. 2017). In addition, the Court agrees with the government that allowing Toomer to present this evidence may amount to an unjustified "mini-trial" on the merits of this case. *Id.* Moreover, "[t]he FCA does not expressly entitle the objecting qui tam relator to discovery at all." *Id.* (citing 31 U.S.C. § 3730(c)(2)(B)). For these reasons, the Court denies Toomer's requests to conduct discovery and hold an evidentiary hearing. In sum, the Court finds that Toomer has not met his burden of showing "that dismissal is fraudulent, arbitrary and capricious, or illegal." Therefore, the Court dismisses all of Toomer's FCA claims with prejudice.

The question remains whether this dismissal should be with prejudice as it relates to the government. The parties submitted supplemental briefing on this point, which the Court has considered. Toomer claims that a dismissal with prejudice must apply to the government as well. In support of this argument, Toomer cites to the district court decision underlying the Ninth Circuit's decision in *Sequoia Orange*. However, the Court finds the passages cited by Toomer inapposite on this point. Rather than discussing whether dismissal is with prejudice as to the government, the passages discuss the standard of review courts should apply when the government seeks dismissal of a relator's FCA claims. *See United States ex rel. Sequoia v. Sunland Packing House Co.*, 912 F. Supp. 1325, 1337-38 (E.D. Cal. Sep. 27, 1995).

The government asks the Court to dismiss the claims with prejudice as it relates to Toomer, but without prejudice as it relates to the government. In support of this request, it cites decisions from courts outside of the Ninth Circuit. While not binding on this Court, such decisions are persuasive authority. Upon review, the Court agrees with the approach taken by the United States District Court for the District of Utah. When confronted with a similar question, it dismissed the relevant claims with prejudice as to the relator, but without prejudice as to the government. *See U.S. ex rel. Wickliffe v. EMC Corp.*, No. 1-06-CV-64-DAK, 2010 WL 3662467, at *2 (D. Utah Sep. 15, 2010). The district court explained:

> Relators have failed to explain how a dismissal under § 3730(c)(2)(A) could possibly be a dismissal with prejudice as to the United States when the United States has not asserted any claims—and is attempting to preclude the Relators' attempt to bring the claims on behalf of the United States.

MEMORANDUM DECISION AND ORDER- 14

*Id.* at *2 n.3.

The Court shares this concern. How can dismissal be with prejudice as to the United States when the United States has not asserted a single claim, or even acquiesced to Toomer pursuing the FCA claims on his own? It simply seeks the dismissal of Toomer's attempt to bring these claims on its behalf. As such, the Court finds it appropriate to dismiss the FCA claims with prejudice as it relates to Toomer, but without prejudice as it relates to the government. This dismissal will not prevent the government from asserting similar claims against TerraPower and BEA in the future should it elect to do so.

*B. Remaining Claims*

Besides his FCA claims, Toomer asserts three additional claims: unjust enrichment, declaratory judgment, and retaliation. The United States does not seek to dismiss the retaliation claim, but asserts Toomer should proceed on that claim alone, without the United States. As for the remaining two claims, the government asserts Toomer "lacks the authority to bring non-False Claims Act causes of action on behalf of the United States." Dkt. 14, at 19 (citing *U.S. ex rel. Fortenberry v. Holloway Grp., Inc.*, 515 B.R. 827, 830 (W.D. Okla. 2014) ("A relator in a qui tam FCA action does not have standing to assert common law claims based upon injury sustained by the United States.")). At oral argument, Toomer acknowledged that he lacks standing to bring the unjust enrichment claim. The Court agrees. Toomer's unjust enrichment claim is DISMISSED.

MEMORANDUM DECISION AND ORDER- 15

Toomer does, however, argue that his claim for declaratory judgment is proper, and should be allowed to proceed. In support of this argument, he cites to 28 U.S.C. § 2201. This section provides that, with some limitations not applicable here, "any court of the United States, upon the filing of an appropriate pleading, m*ay declare the rights and other legal relations of any interested party seeking such declaration*, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C.A. § 2201(a) (emphasis added). The government argues it is not an "interested party seeking [a] declaration" and that, under this section, Toomer cannot obtain a declaration on its behalf. The Court agrees. Toomer's claim for declaratory judgment is DISMISSED.

*C. Motion to Unseal*

Finally, Toomer seeks to unseal this case. Qui tam cases must initially be filed under seal to allow the government time to investigate the allegations and decide whether it will intervene. *See* 31 U.S.C. § 3730(b). Toomer argues that the government has already revealed everything about this case to the Defendants and that, accordingly, there is no reason to continue to keep this case under seal. At oral argument, the government stated that it does not oppose the Court lifting the seal if such an act occurs after the Court grants its Motion to Dismiss. Because the Court is granting the government's Motion to Dismiss, it now lifts the seal previously imposed in this case.

# V. ORDER

THE COURT HEREBY ORDERS:

1. The United States' Motion to Dismiss (Dkt. 14) is GRANTED. Toomer may only proceed with his retaliation claim.

2. Toomer's FCA claims are DISMISSED with prejudice as it relates to Toomer, but without prejudice as it relates to the United States.

3. Toomer's unjust enrichment and declaratory judgment claims are DISMISSED.

4. Toomer's Request for an Evidentiary Hearing and Motion to Unseal the Case (Dkt. 23) is GRANTED in PART and DENIED in PART. The Court will unseal the case but will not hold an evidentiary hearing.

5. The Clerk of the Court is directed to unseal this case in its entirety.

DATED: October 10, 2018

David C. Nye
U.S. District Court Judge