Nathan M. Olsen
Petersen Moss Hall & Olsen
485 "E" Street, Idaho Falls, ID 83402
Telephone: (208) 523-4650
E-mail:  nolsen@pmholaw.com
Fax: (208) 524-3391
ISBN: 7373
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE UNITED STATES OF AMERICA, *ex rel.* Douglas V. Toomer; and DOUGLAS V. TOOMER, individually<br><br>Plaintiffs,<br><br>vs.<br><br>TERRAPOWER, LLC; and BATTELLE ENERGY ALLIANCE, LLC;<br><br>Defendants. | **RELATOR'S COMPLAINT PURSUANT TO THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. §§ 3729 *Et Seq.***<br><br>**FILED UNDER SEAL**<br><br>**DO NOT PLACE ON PACER**<br><br>**DO NO PLACE IN PRESS BOX**<br><br>**CIVIL ACTION NO. 4:16CV00226-DCN** |

## COMPLAINT PURSUANT TO
## THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. § 3729 *Et Seq.*

### I. INTRODUCTION

1.  Douglas V. Toomer (Toomer), on behalf of the United States and its agency the United States Department of Energy (DOE), brings this action against TerraPower, LLC (TerraPower) and Battelle Energy Alliance, LLC (BEA) for violations of the *Federal False Claims Act* (False Claims Act or FCA) to recover all damages, civil penalties and all other recoveries provided for under the *False Claims Act*.

2.  This action arises out of and seeks remedies for TerraPower and BEA conspiring to knowingly present or cause to be presented false or fraudulent claims under 31 U.S.C. § 3729(1) with regard to the usurpation of an extremely valuable "Subject Inventions" and other property rights involving nuclear energy fuel rods that should belong to the Government under a Cooperative Research and Development Agreement (CRADA) 5 U.S.C. § 3701 et. al.

## II.  THE PARTIES

3.  The United States is a plaintiff to this action.  The United States brings this action on behalf of itself and on behalf of its agency, the United States Department of Energy (DOE).

4.  Defendant TerraPower, which is a limited liability company based out of Bellevue, Washington, conducts research and development on nuclear energy technologies, which includes at all times relevant such work at the Idaho National Laboratory (INL) in Idaho, which is owned by the DOE.

5.  Defendant BEA, which is a limited liability company based in Idaho Falls, Idaho, at all times relevant is the Managing and Operating contractor of the DOE-owned INL and is charged with managing nuclear energy research, development, demonstration, and education services at the INL.

6.  As authorized by DOE, BEA and TerraPower entered into several CRADAs beginning in October of 2011 for the research and development of certain technologies at the INL.

7.  The Relator, Toomer, is an individual who was employed by BEA as a "Relationship Manager" which included as a part of his responsibilities oversight of the proper implementation

and protections provided under the CRADAs, and who also brings a claim individually under 31 U.S.C. § 3730(h) for "Relief From Retaliatory Actions."

8. Relator has standing to bring this action pursuant to 31 U.S.C. § 3730(b)(1). Relator brings this action on behalf of the United States for violations of the *False Claims Act*.

9. Relator's complaint is not based on any other prior public disclosures of the allegations or transactions discussed herein.

### III.  JURISDICTION AND VENUE

10. Jurisdiction is founded upon the *False Claims Act* (the "Act" or the "False Claims Act"), 31 U.S.C. § 3729 *et seq.,* specifically 31 U.S.C. § 3732(a) and (b), and also 28 U.S.C. §§ 1331, 1345.

11. Venue in the United States District Court for the District of Idaho is appropriate under 31 U.S.C. § 3732(a) and 3730(h)(2) in that, at all times material to this civil action, the defendants transacted business in the State of Idaho or submitted or caused the submission of false claims in the State of Idaho.

### IV. THE FALSE CLAIMS ACT

12. The *Federal False Claims Act* (FCA), 31 U.S.C. §§ 3729-3733, provides, inter alia, that any person who:

(A)    knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B)    knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(C)     conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);

(D)     has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property;

(E)     is authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;

(F)     knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or pledge property; or

(G)     knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,

31 U.S.C. § 3729(a)(1)(A)-(G).

13.  The terms "knowing" and "knowingly" are defined to mean "that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(l)(A)(i)-(iii). Proof of specific intent to defraud is not required. 31 U.S.C. § 3729(b)(l)(B).

14.  The term "claim" means "any request or demand, whether under a contract or otherwise, for  money or property and whether or not the United States has title to the money or property, that (1) is presented to an officer, employee, or agent of the United States; or (2) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (a) provides or has provided any portion of the money or property requested or demanded; or (b) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded .... 31 U.S.C. § 3729(b)(2)(A)(i)-(ii).

15.  The term "material" means "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

## V.  COOPERATIVE RESEARCH AND DEVELOPMENT AGREEMENTS (CRADA)

16.  A CRADA is a type of agreement established under the "Federal Technology Transfer Act of 1986" designed to establish collaborative research and development agreements for technological innovations of technological developments for use by both Government and private industry.  15 U.S.C. § 3701, 3702.

17.  Under a CRADA, the Government provides its facilities and resources, including in particular the Federal Laboratories, as well as some in-kind[1] contributions for laboratory

---

[1]  "In Kind Contributions" is defined in the CRADA Order on page 10 as follows: "Noncash contributions provided by the Participant or contractor. In-kind contributions must include collaboration in the research and development efforts of the CRADA and may also include personnel, services, facilities, equipment, intellectual property and other resources. Work may be performed at either party's facilities and include services that are directly beneficial, specifically identifiable, and necessary for performance of the project. In-kind contributions generally do not include work performed prior to execution of the CRADA."

activities to support a non-federal entity or "Participant" for the potential conception, development and testing of new technologies and inventions.   See as reference CRADA attached as Exhibit B, Article IIIA and page 10 of DOE Order 483.1A on Subject "DOE Cooperative Research and Development Agreements," (CRADA Order)  approved on November 6, 2013, which provides the explicit guidance and instruction on what must be contained within a CRADA.  The CRADA Order is not attached herein but is available from the plaintiff upon request.

18.  In the process of a CRADA, the parties develop a "statement of work" which sets forth the specific objectives of the CRADA.  Any and all information and data produced in the accomplishment statement of work, or "Generated Information," is subject to the scope and provisions of the CRADA. (See as reference CRADA attached as Exhibit B and CRADA Order.)

19.  A "Subject Invention" of the CRADA means any invention conceived or first actually reduced to practice in the performance of work under the CRADA. (See as reference CRADA attached as Exhibit B, Article I(F) and CRADA Order.)  A patent or patent application is not necessary in order for an invention to be classified as a "Subject Invention."

20.  Subject to the provisions of CRADA, the Government has property rights to both the Generated Information and Subject Inventions of the CRADA. As ordered by the DOE, the CRADA must contain the following underlined provision:

"The parties acknowledge that the Government retains a nonexclusive, nontransferable, irrevocable, paid-up license to practice or to have practiced for or on behalf of the United States every Subject Invention under this CRADA throughout the world."

(See as reference CRADA attached as Exhibit B, Article XV and CRADA Order attachment 3, page 5.)  Additionally, a Subject Invention does not require an approved patent in order to qualify as a Subject Invention.

21.  In agreeing to enter into a CRADA, the Government shall give preference to companies in the United States who agree that the use of any such inventions will be manufactured substantially in the United States.  15 U.S.C. § 3710a(4)(B).  In addition, Subject Inventions must be manufactured substantially in the United States, unless and only if the invention is unable to grant licenses to or it is not feasible to manufacture the invention in the United States.  18 U.S.C. § 204 "Preference for United States Industry.[2]"

22.  Principles guiding the CRADA include the advancing of program missions at the laboratory, including any national security mission, and the safeguarding of classified and sensitive information.  15 U.S.C. § 3710a(6)(g)(1) and (2).

## VI.  STATEMENT OF FACTS

23.    On September 22, 2011, DOE's Managing and Operating contractor for the INL, BEA, entered into a CRADA and its accompanying "Statement of Work" with TerraPower for the development and testing of metallic fuel irradiation behavior, fabrication and fast reactor structural materials, all related to nuclear energy, a true and correct copy of which is attached and incorporated herein as "Exhibit A."

24.  On July 3, 2012, BEA entered into another CRADA and its accompanying "Statement of Work" with TerraPower, a true and correct copy of which is attached and

---

[2] These provisions in the law are also covered in explicit detail in the CRADA itself, See Exhibit B, Article XXII: "U.S. Competitiveness."

incorporated herein as "Exhibit B."  This 2012 CRADA allows for the further development and

irradiation testing of variants of "barrier coatings" in nuclear fuel rods.  Nuclear fuel rods are the

parts to nuclear fuel assemblies loaded into nuclear reactors.

    25.  The 2012 CRADA commits the DOE to over $17 million in in-kind contributions

for the project from the year 2012 through 2017 (Article III(b)), including the following:

    a.  Nuclear material to be used in experiments,

    b.  HT-9 cladding required for fabricating experiments,

    c.  Irradiation vehicle hardware,

    d.  Shipment of unirridated experiments from MFC to ATR,

    e.  Configuration and insertion of experiments in ATR,

    f.  Irradiation unit charges,

    g.  Removal from ATR and canal operations for loading the shipping cask,

    h.  As-run/projection analysis,

    i.  Shipment of experiments from ATR to HFEF after irradiation is completed,

    j.  Removal of experiments from the shipping cask into the hot cells,

    k.  Disposition of irradiated experiments and materials.

    26.  On August 8, 2014, BEA entered into a modification of its 2012 CRADA and its

accompanying "Statement of Work" with TerraPower, a true and correct copy of which is

attached and incorporated herein as "Exhibit C."  Among other provisions, the modification

commits additional DOE in-kind funds and resources to the CRADA through 2020 for another

approximately $5.6 million (totaling $23.6 million from 2012-2020).

27.  Toomer was directly involved with the drafting of and facilitation of these CRADAs, and in fact is the "point of contact" listed for BEA in the respective agreements.  The terms and obligations of CRADA, including the Government's rights for any Subject Inventions or Generated Information, are specifically stated (see Article I of the agreements), which Toomer reviewed both with BEA and TerraPower.   Throughout the process of the negotiations and thereafter, TerraPower assured Toomer that it was aware of the CRADA restrictions and conditions, including that Subject Inventions should be substantially manufactured in the United States, as well as the Government's rights to the Generated Information and Subject Invention.

28.  The benefits of the Subject Inventions or Generated Information developed under the CRADA are massive.  It has the potential of substantially if not completely eliminating the failure of nuclear fuel rods during their operation in nuclear energy plants, and in particular the next generation of advanced nuclear reactors.  Additionally, the invention can potentially be retrofitted to nuclear fuel rods in existing nuclear facilities.

29.  The advantages of eliminating or substantially reducing fuel failure cannot be understated.  Fuel failures can jeopardize the competitive advantage of nuclear power's low production cost through lost power generation, increased inspection and repair costs, and the premature discharge of fuel assemblies.  The cost of the fuel in a single plant is $150 to $200 million and, in current generation reactors, approximately 1/3 of the fuel becomes spent and must be replaced approximately every 18 months.  A single failed nuclear rod can cause premature fuel replacement and cost more that $1 million per day in outage time, fuel and power

replacement costs.  Attached and incorporated herein as "Exhibit D" are two published articles on the challenges and effects of nuclear fuel failures.

30.  The efforts and results of the development and testing of the nuclear fuel rod barrier coatings being conducted under the CRADAs have been largely successful.

31.  On at least two separate occasions Toomer specifically asked TerraPower whether it had applied for patents for the inventions being developed under the CRADA.  In each instance, TerraPower represented that it had not applied for such patent.  However, contrary to TerraPower's prior representations,  during negotiations for developing an additional CRADA occurring in March of 2015, TerraPower for the first time notified Toomer (as BEA's representative) that TerraPower was claiming as background intellectual property an invention on which TerraPower had applied a patent associated with work done under the CRADA. TerraPower further advised BEA for the first time that it (TerraPower) had filed a provisional patent application in December of 2012 and a non-provisional patent application in March of 2013, which was published by the U.S. Patent Office in July of 2014, a true and correct copy of which is attached and incorporated herein as "Exhibit F."  Contrary to its prior representations to BEA, TerraPower also claimed that some key information associated with the CRADA was TerraPower's proprietary information.  As further example of TerraPower's attempt to conceal its obligations to the Government under the CRADA, at the time that TerraPower applied for the patents, it did not provide a sworn declaration under 42 USC § 2182 "setting forth the full facts surrounding the making or conception of the invention or discovery described in the application and whether the invention or discovery was made or conceived in the course of or under any

contract, subcontract, arrangement entered into with the government."  Without question, the underlying invention in the patent application was developed as part of a government contract, and should have been disclosed as such at the time of the application.

32.   Upon review of the claimed proprietary information and patent applications, BEA researchers and program management personnel (including Toomer) confirmed that the information was not TerraPower's proprietary information and the invention should be identified as a "Subject Invention" per the provisions of the existing CRADAS.  BEA senior management as well as BEA's legal department were notified of the issues.

33.   BEA informed TerraPower that the claimed proprietary information was in fact not proprietary and the claimed invention was in fact a Subject Invention under the CRADAs. However, TerraPower was adamant that it held the proprietary information and invention and they were not subject to the CRADAs, despite the overwhelming evidence otherwise, and despite its prior representations on the issue.  Attached and incorporated herein as "Exhibit E" is a white paper prepared by INL personnel that articulates the reasoning why the purported proprietary information and invention are in fact subject to the CRADAs.  However, Toomer was concerned that notwithstanding the clear evidence of the CRADA violations, the "summary" of the white paper did not recommend any action to appropriately address the issue, but rather equivocated and suggested for further "clarification."

34.   As Toomer conducted efforts to resolve the issues, including obtaining clarification of the meaning of "Generated Information" from DOE's intellectual property counsel,  DOE's counsel responded  that:

 "A CRADA is a collaborative research effort directed towards the accomplishment of work specified in the Statement of Work (SOW) of this Agreement. Accordingly, 'Generated Information' is to be interpreted broadly and, without limitation, includes all information and data that is produced to accomplish the SOW or in performance of the SOW, regardless of who produced the information, where it was produced, or how it was produced or funded."

35.   Additionally, despite the explicit restrictions under the CRADA which TerraPower was aware of, Toomer learned that TerraPower's true and previously undisclosed purpose is to primarily manufacture and market these inventions and technologies (i.e. the Subject Inventions) for advanced nuclear reactor fuels in China, India and other foreign entities without having any obligations to the U.S. Government,  and thus violating a crucial component of the CRADA to protect the US taxpayer, as well as presenting potential national security issues, liabilities for the United States, and a potential breach of protected and sensitive nuclear information.  Again, from the very outset of TerraPower's negotiation of the CRADAs, TerraPower was notified of and acknowledged the manufacturing restrictions, and in complete defiance of the law has instead aggressively moved forward with negotiating the manufacturing of these Subject Inventions to these foreign entities.

36.  As further example of TerraPower's aggressive disregard of the manufacturing restrictions under the CRADA, Toomer also has knowledge that TerraPower is vigorously working to persuade the United States to authorize waivers to trade sanctions against Russia, stemming from Russia's invasion of the Ukraine, to enable TerraPower to send samples of the

Subject Invention to Russia for further irradiation demonstrations of the Subject Invention,

planned to begin as soon as possible.  Such demonstrations will involve Government owned

nuclear materials wherein the United States will retain responsibilities and liabilities for all

nuclear and irradiated materials associated with the demonstrations.  Per TerraPower's prior

undisclosed business model to sell the Subject Invention and other nuclear technology concepts

to foreign entities for manufacture and deployment outside of the United States, the only

beneficiaries of these demonstrations will be TerraPower and the foreign entities at the expense

of the Government and taxpayer.

      37.   By not having the entitled rights under the CRADA, the Government and U.S.

Taxpayer are deprived of jobs and benefits that would be obtained from the manufacturing of the

Subject Invention (i.e. nuclear fuel rods) in the United States and the worldwide licensing of

such rights for current reactors and for next generation advanced nuclear reactors, which is

hundreds of millions of dollars per reactor.  Recognizing that this will likely affect 10's if not

100's of reactors, this equates to the loss of billions of dollars in jobs and benefits for the

Government and U.S. Taxpayer.  In addition, allowing these nuclear fuel rods to be

manufactured outside of the United States, including China, India and Russia, would result in

potential liability and harm to national security of the United States.  Continuing to allow this

fraudulent breach of CRADA requirements and obligations will also set precedence for all

current and future CRADAs across all Government agencies that CRADA requirements and

obligations to the Government and U.S. Taxpayer do not need to be honored.

38.  By acting under false pretenses, TerraPower has unjustly benefitted from the more than $17 million in contribution from the Government at the INL for the development and testing of the Subject Invention which it intends to illegally market and manufacture to foreign entities in violation of the CRADA.  Additionally, TerraPower has unjustly benefitted from the liability protections provided by the Government under the CRADA for the handling of nuclear materials generated from the testing of the Subject Invention.  This is a benefit that is worth millions of dollars.

39.  Because of the enormous implications to the Government and the U.S. Taxpayer of the violation of the CRADA, Toomer stepped up his efforts to notify BEA and TerraPower of these violations and to take corrective measures.  However, TerraPower became increasingly upset with Toomer's efforts because having to comply with the provisions of the CRADAs would significantly impact TerraPower's previously undisclosed business model; which is to, with the aid and contributions of the DOE and the National Laboratory complex, develop advanced nuclear power reactors and advanced nuclear fuel concepts, and then sell the concepts to foreign entities.

40.  TerraPower then applied pressure to Toomer's senior management at BEA to back off and change its position on the matter, and to also have Toomer removed from any involvement with TerraPower and the CRADAs.  TerraPower was successful on both fronts.

41.  Toomer continued to meet with BEA senior management and general counsel to insist that the DOE's and U.S Taxpayers' rights and property be protected under the CRADAs.

Toomer received repeated indications that BEA was particularly enamored with TerraPower, and its founder Bill Gates, and did not want to jeopardize BEA's relationship with them.

42.   Toomer further insisted that BEA formally request that DOE become involved in the matter.  Toomer told BEA's legal counsel that if BEA wouldn't take it to DOE "he would."  This upset BEA's counsel immensely, who became hostile and proclaimed that "his job was to protect BEA and not to look out for me (Toomer), DOE or the taxpayer."  Toomer was told to be prepared for "ramifications" if he pushed the issue further.

43.   In December of 2015, during his annual review, Toomer was stripped of all of his responsibilities and effectively told to "find work elsewhere" at BEA.  He also was not given an end of the year bonus which he previously routinely received.

44.   Toomer was excluded from other job opportunities at BEA that fit his qualifications, and was not told of potential opportunities until after the positions were filled.

45.   Subsequently, Toomer's work environment became very hostile and intolerable.  He was isolated from management with zero communications and his co-workers kept their distance.

46.   As a result of BEA's conduct, Toomer suffered humiliation, very high emotional anxiety and distress, leading to illness and high blood pressure.  This was amplified by being forced to compromise his principles and values, i.e. the overlooking of the improprieties that were occurring.

47.   As a result of the hostile and unjust work environment, Toomer had no choice but to terminate his employment, which occurred in the beginning of May 2016.

## FIRST CAUSE OF ACTION
### (False Claims Act: Presentation of False Claims)

48.  The United States repeats and realleges each allegation in the preceding paragraphs as if fully set forth herein.

49.  TerraPower knowingly presented or caused to be presented a false or fraudulent claim or claims for approval to an officer, employee or agent of the United States, in violation of 31 U.S.C. § 3729(a)(l).

50.  TerraPower has knowingly and falsely asserted that it holds valuable property rights to Subject Inventions and Generated Information that in fact belong to the Government under the CRADAs.

51.  TerraPower has further sought to patent and market such Subject Inventions to manufacturers outside of the United States, in direct violation of CRADA and its obligations under the CRADA agreements.

52.  TerraPower knowingly presented and/or caused to be presented false claims in the form of false certifications to the DOE or its agents for approval by the United States.

53.   By virtue of the false or fraudulent claims that TerraPower made or caused to be made, the United States is entitled to recover multiple damages and penalties under the *False Claims Act*.

54.  As a direct and proximate result of TerraPower's false claims, misrepresentations and concealments, the Government and U.S. Taxpayer has suffered substantial direct, proximate,

and foreseeable financial losses, as well as other incidental damages and is entitled to treble

damages in the amount of the loss.

## SECOND CAUSE OF ACTION
### (False Claims Act: Making or Using False Record or Statement)

55.  The United States repeats and realleges each previous allegation in the preceding

paragraphs as if fully set forth herein.

56.  Defendants TerraPower and BEA, to preserve the 'relationship' between themselves,

knowingly made, used, or caused to be made or used false records or statements material to a

false or fraudulent claim or claims in violation of 31 U.S.C. § 3729(a)(l)(B).

57.  By virtue of the false records or statements that Defendants made or caused to be

made, the Government and U.S. Taxpayer has suffered substantial direct, proximate, and

foreseeable financial losses, as well as other incidental damages  and is entitled to recover

multiple damages and penalties under the *False Claims Act.*

## THIRD CAUSE OF ACTION
### (False Claims Act: Failure to Deliver Possession of Property)

58.  The United States repeats and realleges each previous allegation in the preceding

paragraphs as if fully set forth herein.

59.  TerraPower has held onto valuable property rights to Subject Inventions and

 Generated Information that in fact belong to the Government under the CRADAs.

60.  TerraPower has possession, custody, or control of property of the Government and

has caused to be delivered less than all of that money or property in violation of 31 U.S.C. §

3729(a)(l)(D).

61.  By holding onto possession, custody or control of property of the Government, the the Government and U.S. Taxpayer has suffered substantial direct, proximate, and foreseeable financial losses, as well as other incidental damages and is entitled to recover multiple damages and penalties under the *False Claims Act*.

**FOURTH CAUSE OF ACTION**
**(False Claims Act: Concealing or avoiding obligation to Government)**

62.  The United States repeats and realleges each previous allegation in the preceding paragraphs as if fully set forth herein.

63.  TerraPower and BEA entered into CRADA agreements that require that Subject Inventions and Generated Information from the CRADA belong to the Government.  Defendants have nevertheless failed to convey or transmit such property to the Government.

64.  Defendants have therefore knowingly made, caused to be made, or used a false record or statement material to an obligation to transmit property to the Government or has knowingly concealed, avoided or decreased an obligation to pay or transmit property to Government in contravention of 31 U.S.C. § 3729(a)(l)(G).

65.  By making such false statements with regard to obligations to transmit property to the Government or concealing such obligations, the Government and U.S. Taxpayer has suffered substantial direct, proximate, and foreseeable financial losses, as well as other incidental damages  and is entitled to recover multiple damages and penalties under the *False Claims Act*.

## FIFTH CAUSE OF ACTION
### (False Claims Act: Conspiring to commit violations)

66.  The United States repeats and realleges each previous allegation in the preceding paragraphs as if fully set forth herein.

67.  TerraPower and BEA, to preserve the 'relationship' between themselves, have conspired to commit the aforementioned multiple violations of the False Claims Act.

68.  Because of such conspiracy, the Government and U.S. Taxpayer has suffered substantial direct, proximate, and foreseeable financial losses, as well as other incidental damages  and is entitled to recover multiple damages and penalties under the *False Claims Act* jointly and severally from defendants BEA and TerraPower.

## SIXTH CAUSE OF ACTION
### (Declaratory Judgment)

69.  The United States repeats and realleges each previous allegation in the preceding paragraphs as if fully set forth herein.

70.  Under the remedies set forth under 28 USC § 2201, the Court may declare rights and other legal relations to prevent a future harm.

71.  The Court should therefore issue a declaratory judgment defining and protecting the Subject Invention and Generated Information, thus protecting the Government's property rights and preventing the potential and massive future harm of the Subject Invention being manufactured outside of the United States in violation of the CRADA.

72.  The absence of a declaratory judgment could allow TerraPower to proceed with the licensing of manufacturing of the Subject Invention outside of the United States in violation of

the CRADA, at which point the damage done to the United States will be irreparable or extremely difficult to recover.

## SEVENTH CAUSE OF ACTION
### (unjust enrichment/mistake of fact)

73.  The United States repeats and realleges each previous allegation in the preceding paragraphs as if fully set forth herein.

74.  TerraPower obtained substantial benefits under the CRADA, including no less than $17 million in-kind contributions and significant liability protections under false pretenses and/or known mistakes of fact.

75.  TerraPower has therefore been unjustly enriched or has improperly obtained benefits from the Government.

76.  The United States is entitled to a refund or reimbursement of any and all unjustly obtained benefits.

## EIGHTH CAUSE OF ACTION
### (relief from retaliation)

77.  The United States repeats and realleges each previous allegation in the preceding paragraphs as if fully set forth herein.

78.  As a direct result of Toomer's efforts to raise the concerns alleged herein, Toomer did suffer threatening and harassing conduct by supervisors and others who wished to protect BEA's relationship with TerraPower and cover-up TerraPower's wrong doing.

79.  Toomer's work environment became very hostile and intolerable resulting in his constructive discharge.

80.  Pursuant to 31 U.S.C. § 3730(h)(1) and (2), Toomer is entitled to two times the amount of lost compensation or any other damages sustained for BEA's discriminating conduct, as well as and award of his litigation costs and reasonable attorneys.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that judgment be entered in its favor against TerraPower and BEA under the *False Claims Act*, for the amount of the United States' damages, trebled as required by law, and such civil penalties as required by law including the Relator's attorney fees and costs, and such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Trial by a jury is demanded in this case and the fees therefore will be tendered pursuant to the Rules of Court.

DATED this 10th day of February, 2017.

PETERSEN MOSS HALL & OLSEN


 /s/ Nathan M. Olsen_____
Nathan M. Olsen