UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE UNITED STATES OF AMERICA, *ex rel.*, DOUGLAS TOOMER,<br><br>    Plaintiff,<br>v.<br><br>TERRAPOWER, LLC and BATTELLE ENERGY ALLIANCE, LLC,<br><br>    Defendant. | Case No. 4:16-cv-00226-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Battelle Energy Alliance, LLC's ("BEA") Motion to Compel (Dkt. 108), Plaintiff Douglas V. Toomer's ("Toomer") Motion to Compel (Dkt. 116), and Toomer's Motion to Extend Deadline and for Sanctions (Dkt. 122). Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding delay, and because the Court conclusively finds the decisional process would not be significantly aided by oral argument, the Court will decide the Motions on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

For the reasons set forth below, BEA's Motion to Compel is DENIED, Toomer's Motion to Compel is DENIED, and Toomer's Motion to Extend Deadline and For Sanctions is DENIED as MOOT. Briefing for BEA's Motion for Summary Judgment will RESUME and Toomer will have twenty-one days (21) to respond from the date of this order.

MEMORANDUM DECISION AND ORDER - 1

## II. BACKGROUND

On June 6, 2016, Douglas Toomer, an individual, filed a complaint against Defendants TerraPower, LLC ("TerraPower") and BEA (collectively "Defendants") on behalf of the United States Government. Dkt. 1. He then filed an Amended Complaint in February 2017, asserting eight claims: (1) presentation of false claims in violation of the False Claims Act ("FCA"); (2) making or using false records or statements in violation of the FCA; (3) failure to deliver possession of property in violation of the FCA; (4) concealing or avoiding obligations to the Government in violation of the FCA; (5) conspiring to commit violations of the FCA; (6) declaratory judgment; (7) unjust enrichment/mistake of fact; and (8) unlawful employment retaliation. Dkt. 10.

The FCA does not permit a relator[1] like Toomer to serve a complaint on the Defendants until the Government decides whether it wishes to intervene, or to allow the relator who originally filed the case to proceed with the litigation on the Government's behalf. Thus, Toomer, as the "relator" in the suit, originally only served the Complaint on the Government.

On November 11, 2017, the Government elected to move for dismissal, rather than allow the litigation to proceed in its name. However, the Government did not formally

---

[1] The Ninth Circuit has succinctly described "relators" and the structure of a FCA case as follows:
> Under the False Claims Act, any person who defrauds the United States Government is liable for civil penalties. 31 U.S.C. § 3729 (1994). Although the FCA requires the Attorney General to investigate possible violations, *id*. § 3730(a), the FCA also permits civil qui tam actions by private persons, known as relators, *id*. § 3730(b). In a qui tam action, the relator sues on behalf of the government as well as himself. If the relator prevails, he receives a percentage of the recovery, with the remainder being paid to the government.

*U.S. ex rel. Biddle v. Bd. of Trustees of Leland Stanford, Jr. Univ.*, 161 F.3d 533, 535 (9th Cir. 1998).

MEMORANDUM DECISION AND ORDER - 2

intervene in the case under 31 U.S.C. § 3730(c)(3) prior to moving for dismissal.

On October 10, 2018, the Court granted the Government's motion to dismiss all of Toomer's claims except for his unlawful employment retaliation claim. Dkt. 40. Toomer is seeking $7,708,662 in damages for lost wages, lost benefits, and emotional distress as the result of BEA's purported retaliation. Dkt. 10, ¶¶ 78–80; Dkt. 109, at 13.

On November 2, 2018, BEA filed a Motion to Strike Allegations relating to the dismissed claims. Dkt. 49. The Court denied the Motion to Strike and ruled that some of the allegations in the dismissed claims may still be relevant to the remaining retaliation claim. Dkt. 70.

Later, the parties engaged in discovery and a Protective Order was issued by the Court on February 2, 2021. Dkt. 92.

The Court turns next to a review of the facts giving rise to the instant motions.

**A. BEA's Motion to Compel**

On or about May 7, 2021, Toomer responded to BEA's Interrogatories and Requests for Production. Dkt. 111, at 2. Conflicts arose between the parties because of Toomer's answers to Interrogatories Nos. 5, 12, 13, and Requests for Productions Nos. 13 and 14. Dkt. 108-1, at 3–6. Thereafter the parties met and conferred with each other—and the Court—to remedy the disagreements with Toomer's answers. Eventually these efforts resulted in an agreement between the parties that Toomer would produce all of his medical documents from 2014 to the present. Dkt. 108-1, at 6; Dkt. 111, ¶ 5. The Court will briefly review the disputed interrogatories and requests.

Interrogatory No. 5 asked Toomer for, "a full and complete itemization of all damages claimed by you with regard to your Eighth Cause of Action (relief from retaliation) alleged in your Complaint." Dkt. 108-1, at 3. In addition, BEA asked for Toomer to identify all persons who have knowledge of the facts that lead to the damages. *Id*. Toomer's response stated that, "[d]amages for emotional distress will be determined by a jury in accordance with the jury instructions." *Id*.

Interrogatories No. 12 and No. 13 ask for similar information such as providing a list of all healthcare providers that Toomer has seen since 2014. *Id*. at 3–5. After numerous meet and confer attempts (and supplemental answers), Toomer answered both interrogatories by producing a letter from Dr. Leland Krantz—his former primary physician—which stated that the reason for Toomer's high blood pressure, despite "weight loss," was because of "job stressors." Dkt. 111, at 2; Dkt. 109, at 175. Toomer has also produced medical records from Dr. Roger H. Tall—a Urologist at Mountain View Hospital—which show the medication he was taking in 2016, and that he had hypertension and other medical issues. Dkt. 109, at 5, 158–59.

Requests for Production No. 13 and 14 asked for Toomer's medical records and a list of healthcare providers he had seen relating to his retaliation claim. Dkt. 108-1, at 5–6. In response, Toomer pointed towards the letter from Dr. Krantz and the records from Dr. Tall. Dkt. 108-1, at 5–6; Dkt. 111, at 2.

BEA found Toomer's responses, and the items produced, inadequate. Toomer admits there were likely more medical records, but they were probably "lost and disposed of" after Dr. Krantz retired and sold his practice to Mountain View Hospital in 2016. Dkt.

MEMORANDUM DECISION AND ORDER - 4

111, at 3–4. Toomer states he sent Mountain View Hospital an authorization request for all his medical records and had given BEA everything that Mountain View Hospital gave to him. *Id*. BEA is unconvinced by Toomer's reasoning and believes that Toomer "backtracked" from his promise to produce all relevant medical records. Dkt. 108-1, at 4, 6, 7–8, 19.

On March 28, 2022, BEA filed a Motion to Compel. Dkt. 108. On April 18, 2022, Toomer filed his Response. Dkt. 111. On May 2, 2022, BEA filed its Reply. Dkt. 113. Additionally, BEA moved the Court for attorney fees and costs if the Motion is granted under Federal Rule of Civil Procedure 37. Dkt. 108-1, at 19. In his Response, Toomer asked for attorney fees and costs under Rule 37 if the Motion is denied. Dkt. 111, at 7–8.

Toomer contends that BEA is engaging in a "fishing expedition" to harass him, that he has provided all medical documents from 2014 to present to BEA, that Dr. Krantz and Mountain View Hospital were the only providers he used for medical treatment, and that any additional medical history is irrelevant. *Id*. at 2, 6. BEA suspects that Toomer has seen more providers outside of Mountain View Hospital. Dkt. 109, ¶ 15. BEA also argues that this discovery dispute would be resolved if Toomer would sign a medical release form to allow BEA to search for any additional documents on Toomer's behalf. Dkt. 108-1, at 17; Dkt. 113, at 6.

### B. Toomer's Motion to Compel

On June 7, 2019, Toomer requested production of communications and documents from BEA. Dkt. 116, at 2. BEA objected to Requests for Production Nos. 1–3 and 5–8. *Id*. In these Requests, Toomer asked BEA to turn over any and all communications or

documents relating to various subject matter. Again, in this Motion, Toomer also moved for attorney fees and costs if the Motion is granted. *Id*. at 8. BEA in its Response asked for attorney fees and costs if the Motion is denied. Dkt. 117, at 18.

Request for Production No. 1 sought "[a]ny and all internal and external communications pertaining to the subject matter of the case."[2] Dkt. 116, at 2. BEA answered by stating that: (1) it objected to Toomer's definition of "subject matter of the case"; and (2) the Request would invade the attorney-client privilege or the attorney work product doctrine. *Id*.

Request for Production No. 2 sought "[a]ny and all communications or documenting pertaining to the subject matter of this case or with federal agencies, including the United States Department of Energy." *Id*. at 3. BEA answered by stating that: (1) it objected to Toomer's definition of "subject matter of the case"; (2) the Request was "overly broad, unduly burdensome and not reasonably limited in time and scope"; and (3) the attorney-client privilege or attorney work product doctrine would be invaded if it complied with the Request. *Id*.

Request for Production No. 3 sought "[a]ny and all external or internal communications or documents with regard to the plaintiff Doug Toomer." *Id*. BEA answered by stating that: (1) it objected to Toomer's definition of "subject matter of the case"; (2) the Request was "overly broad, unduly burdensome and not reasonably limited

---

[2] Toomer defines the "subject matter of the case" as "US Ex. Rel. Toomer v. TerraPower, LLC, Case No: 4:16 CV00226-DCN filed in the United State District Court for the District of Idaho, including every allegation and cause of action stated therein." Dkt. 117-1, at 10.

MEMORANDUM DECISION AND ORDER - 6

in time and scope"; (3) the Request was "disproportional to the needs of the case and seeks irrelevant information" considering the Court's decision issued on October 10, 2018; and (4) the attorney-client privilege or attorney work product doctrine would be invaded if it complied with the Request. *Id*.

Request for Production No. 5 sought "[a]ny and all documents, including communications, pertaining to or with TerraPower or any off [sic] its agents." *Id*. BEA answered by stating that: (1) the Request was "overly broad, unduly burdensome and not reasonably limited in time and scope"; (2) the Request was "disproportional to the needs of the case and seeks irrelevant information" considering the Court's decision issued on October 10, 2018; and (3) the attorney-client privilege or attorney work product doctrine would be "invaded" if it complied with the Request. *Id*. at 3–4.

Request for Production No. 6 sought "[a]ny and all documents including internal or external communications pertaining to or with the Department of Justice and the US Attorney with regard to the subject matter of this case." *Id*. at 4. BEA answered by stating that: (1) it objected to Toomer's definition of "subject matter of the case"; (2) the Request was "overly broad, unduly burdensome and not reasonably limited in time and scope"; and (3) the attorney-client privilege or attorney work product doctrine would be invaded if it complied with the Request. *Id*.

Request for Production No. 7 sought "[a]ny and all internal or external communications or documents to any person pertaining to the subject matter of this case." *Id*. BEA answered by stating that: (1) it objected to Toomer's definition of "subject matter

MEMORANDUM DECISION AND ORDER - 7

of the case"; and (2) that the Request would invade the attorney-client privilege or the attorney work product doctrine. *Id*.

Request for Production No. 8 sought "[a]ny and all documents pertaining to CRADAs, current, past and future that have been developed or entered into with the assistance of BEA. Please include all drafts, notes, memoranda or any communications relating to the CRADAs."[3] *Id*. BEA answered by stating that: (1) the Request was "overly broad, unduly burdensome and not reasonably limited in time and scope"; (2) the Request was "disproportional to the needs of the case and seeks irrelevant information" considering the Court's decision issued on October 10, 2018; and (3) the attorney-client privilege or attorney work product doctrine would be "invaded" if it complied with the Request. *Id*. at 4–5.

In addition to the aforementioned objections, BEA stated in each of its answers to the Requests that it produced documents identified as Bates Nos. BEA00001-531. BEA states that these documents contained "correspondence and Toomer's personnel file." Dkt. 117-1, ¶ 4. BEA appeared to hand over these documents pursuant to an agreement with Toomer with the understanding that "Mr. Toomer will not use that particular document production as a basis for any argument that Battelle has waived a protection or privilege." Dkt. 117, at 5. In addition, BEA produced Toomer's non-privileged personnel file pursuant to Request for Production No. 4, which Toomer did not object to in his Motion. *Id*. at 15.

---

[3] "CRADA" stands for "Cooperative Research and Development Agreements." Dkt. 10, at 5. These agreements were established under the Federal Technology and Transfer Act of 1986 and designed to "establish collaborative research and development agreements for technological innovations and developments for use by both Government and private industry." *Id*.

Toomer stated that he clarified some of the Requests in email exchanges between the parties, but it does not appear that Toomer formally supplemented his Requests. Dkt. 118, at 5, 7.

### III. LEGAL STANDARD

The Federal Rules of Civil Procedure dictate the scope of discovery: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26 (b)(1). For discovery purposes, courts define relevance broadly, regarding information as relevant if it "bears on," or might reasonably lead to information that "bears on," any material fact or issue in the action. *See Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Proportionality is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "The fundamental principle of . . . Rule 26(b)(1) is that lawyers must size and shape their discovery requests to the requisites of a case." *United States v. HVI Cat Canyon, Inc.*, 2016 WL 11683593, at *4 (C.D. Cal. Oct. 26, 2016) (cleaned up). Courts must limit the frequency or extent of discovery if it becomes cumulative or duplicative or if the information is available more efficiently from another source. *See* Fed. R. Civ. P. 26(b)(2)(C).

If a party served with discovery fails to adequately respond, the serving party may file a motion to compel pursuant to Federal Rule of Civil Procedure 37(a). "A court has

broad discretion in deciding whether to compel discovery." *Tanner v. Schriever*, 2019 WL 5581335, at *1 (D. Idaho Oct. 29, 2019) (citing *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002)). Discovery is permitted "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevant information "need not be admissible in evidence to be discoverable." *Id.*

## IV. ANALYSIS

### A. BEA's Motion to Compel

BEA is correct that there is no dispute between the parties that Toomer agreed to provide *all* of his medical records from 2014 to the present. Dkt. 111, at 7; Dkt. 113, at 2. Toomer believes that most of the documents he provided were irrelevant, but nonetheless contends he provided the requested documents to BEA and that there is nothing more that he can do to find any lost or destroyed evidence. Dkt. 111, at 7.

Further, BEA is correct that Toomer has placed his medical condition of emotional distress at issue by seeking emotional damages for BEA's purported retaliation. *Clark v. Bank of Am., N.A.*, 2016 WL 6275129, at *2 (D. Idaho Sept. 29, 2016) ("When a plaintiff claims emotional distress, then a defendant needs to be able to challenge that claim thoroughly"). The medical records may, or may not, show that BEA's conduct contributed to Toomer's emotional distress, which makes them discoverable. *Id*. Moreover, these records could bear on Toomer's retaliation claim because BEA's purported retaliation may or may not have created or exacerbated Toomer's emotional distress. *See Oppenheimer Fund*, 437 U.S. at 351. In sum, considering the broad standard for relevant evidence under the Federal Rules of Civil Procedure, the medical records that BEA seeks are discoverable.

However, this does not change the fact that Toomer contends he has already provided every medical record he could to BEA. The core issue with this Motion is not whether the evidence is relevant and discoverable, but whether these additional documents even exist. This leaves the burden on BEA to show that additional medical documentation exists. "The party seeking production of the documents . . . bears the burden of proving that the opposing party has" possession, custody, or control over the evidence requested. *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989). Here, Toomer has stated repeatedly that the additional documents do not exist because some were likely lost or disposed of when Dr. Krantz sold his practice to Mountain View Hospital. The Court accepts BEA's belief that additional documents likely did exist at one point, but also accepts Toomer's position that they are no longer accessible and that he has no control over the evidence.[4] Toomer cannot be compelled to produce something that does not exist or is outside of his control to obtain. *Hayes v. Nettles*, 2020 WL 5898775, at *2 (D. Idaho Oct. 5, 2020) ("Defendants cannot be forced to produce something that does not exist.").

BEA argues that if the additional documents do not exist, then Toomer should have produced evidence from Mountain View Hospital stating that the additional records cannot be recovered.[5] Dkt. 113, at 5–6. BEA alleges that Toomer did not make a reasonable

---

[4] BEA admits that it lacks confidence that Toomer can fully identify his providers because of the "passage of time since 2014." Dkt. 108-1, at 17.

[5] The rules require the requested party to provide all requested relevant documents within its custody or control. Fed. R. Civ. P. 34(a). The rules do not require or authorize the requested party to provide an affirmation or declaration from the third party (here Mountain View Hospital) that no other documents exist. *See* Fed. R. Civ. P. 34(b)(2); Fed. R. Civ. P. 37(a). BEA has provided no case law that suggests that a court can require the requested party to get such an affirmation or declaration from a third party.

MEMORANDUM DECISION AND ORDER - 11

inquiry into these additional documents. *Id*. at 6. Toomer contends he did everything he reasonably could to investigate the existence of any other documents.

For their arguments regarding reasonable inquiry, both parties rely on *O'Brien v. Said*, 2020 WL 3058092 (E.D. Cal. June 9, 2020). In *O'Brien*, the court stated, "[a] reasonable inquiry must be made, and if no responsive documents or tangible things exist, [] the responding party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence . . . ." 2020 WL 3058092, at *2 (cleaned up). Here, BEA may not trust Toomer when he says he has committed all reasonable efforts to obtain the documents requested, but it does not change that Toomer's responses are legally adequate. "[I]n the absence of legal or fact-based substantive deficiencies, [the movant] is required to accept the responses provided." *Id*. at 5.

The Court does not believe there are substantive deficiencies in Toomer's responses regarding the difficulty recovering the additional documents. Toomer has stated he only received medical care from Dr. Krantz and Mountain View Hospital since 2014, which is consistent with the documents provided to the Court. Dkt. 111-2, ¶ 3. BEA states that Toomer may have seen other providers outside of Mountain View Hospital and provides a list of recorders/providers from a Mountain View Hospital record. Dkt. 109, ¶ 15. It appears that these providers are associated with Mountain View Hospital and that Toomer saw these providers at Mountain View Hospital. This is consistent with Toomer's statements that he has only received care from Mountain View Hospital after Dr. Krantz retired. Additionally, Toomer's signed discovery responses certify that, to the best of his

"knowledge, information, and belief", he made a reasonable inquiry. Fed. R. Civ. P. 26(g)(1)(B).[6]

The Court agrees with BEA that additional medical documents are relevant and discoverable under the Federal Rules of Civil Procedure, but BEA has not been able to prove that Toomer has possession, custody, or control of any additional medical documents. The Court finds that Toomer has made a reasonable inquiry with sufficient specificity and due diligence into the evidence that BEA requested. While BEA is distrustful of Toomer's responses, without clear evidence of substantive deficiencies in those responses, the Court must accept Toomer's explanations.

Thus, BEA's Motion to Compel is DENIED.

**B. Toomer's Motion to Compel**

Toomer is substantially justified in bringing his Motion to Compel because some of the evidence sought after may be within the scope of discovery. Ultimately, however, most of the Requests are overbroad and would be unduly burdensome to produce.

Toomer relies on the Court's March 5, 2019 Decision as the basis for why his Requests are justified. However, Toomer is incorrect in his assertion that—because the Court denied BEA's Motion to Strike—the door is open for him get every document he desires from BEA. The objections from BEA revolve primarily around the Requests being: (1) outside the scope of discovery; (2) overbroad; (3) and unduly burdensome.[7]

---

[6] Toomer still has a duty to supplement his discovery responses if he learns of any additional relevant evidence under Fed. R. Civ. P. 26(e)(1). Failure to supplement may result in severe consequences for Toomer and Toomer's counsel. *See* Fed. R. Civ. P. 37(c).

[7] BEA did raise attorney-client privilege objections in its answers to the Requests, but in its Response to Toomer's Motion, it states it has already produced the materials sought. Dkt. 117, at 8. The attorney-client

*1. Scope of Discovery*

BEA relies on *Oppenheimer Fund* for why information relating to the dismissed claims are now outside the scope of discovery.[8] The limitation that BEA cites refers to when facts have been stricken from the record. But nothing has been stricken from the Court's record in this case. When the Court denied BEA's Motion to Strike, it stated:

> While the nature of this case (i.e. the fact that it began as a qui tam action) makes this a slightly unusual situation—and adds a layer of complexity—BEA carries a heavy burden in persuading the Court to grant a 12(f) motion. Here, BEA has not met that burden. Particularly concerning to the Court is the possibility that *some* of the information BEA asks the Court to strike may yet prove relevant to Toomer's retaliation claim.

Dkt. 70, at 6 (emphasis in original). It is reasonable to assume that communications between BEA, the Government, and TerraPower involving Toomer and the CRADA agreements could bear on the retaliation claim because Toomer alleges he was retaliated against for speaking out against the CRADA agreements. *See Oppenheimer Fund*, 437 U.S. at 351. The Court finds that some of those communications could be relevant.

*2. Overbroad*

However, the Requests and the definition of "subject matter of the case" are overbroad. In *Jackson v. Montgomery Ward & Co.*, the court did not find the plaintiff's

---

privilege objections are not explored and explained enough in BEA's Response, so the Court will not consider these objections. Additionally, BEA argues that Toomer did not properly meet and confer because there was not a certification included with Toomer's Motion. *Id*. at 18. Toomer had a Declaration attached to his Motion referencing exhibits but did not include them with his Motion. Dkt. 116-1, at 1. BEA did include correspondence between the parties in its Response and it appears a meet and confer did not happen when it comes to issues of this Motion. *See* Dkt. 117-1. However, because of the overlapping issues in the Motions to Compel, and the various meetings the parties have already done, the Court will not punish Toomer for not executing another meet and confer for this specific Motion.

[8] Under Federal Rule of Civil Procedure 26, "it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken." *Oppenheimer Fund*, 437 U.S. at 352.

discovery requests were overbroad because each was: (1) restricted to the period of employment; (2) geographically restricted; and (3) limited to the subject matter of racial discrimination. 173 F.R.D. 524, 528 (D. Nev. 1997).

First, Toomer's definition for the "subject matter of the case" is not clearly defined. The subject matter of this case relates to facts regarding the retaliation claim. The Court left the door open in its Decision on the Motion to Strike that *some* of the information in the dismissed claims could be relevant to the retaliation claim. Toomer stated that every allegation and every cause of action was a part of the subject matter, but that is only true if it is in relation to the retaliation claim. The scope of this definition is far too wide for BEA to properly comply.

Second, many of the requests ask for "any and all" communications between multiple governmental agencies, companies, BEA, and/or Toomer with almost no limitation as to the time period or specific subject matter (such as the CRADAs). Request No. 8 does reference the CRADAs but seeks all CRADAs developed by BEA with no limitation. Toomer admitted that two of the Requests—Nos. 3 and 4—were overbroad, but tried to limit them in emails with BEA to communications between TerraPower and BEA pertaining to the CRADAs. Dkt. 118, at 5, 7. However, even with Toomer's amendments and explanations, the time period is not restricted, and it is unclear how some of these Requests relate to the retaliation claim and Toomer specifically.

### 3. Unduly Burdensome

In addition, all of the Requests would be unduly burdensome for BEA to produce. "The party claiming that a discovery request is unduly burdensome must allege specific

facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence." *Jackson*, 173 F.R.D. at 528–29. Here, BEA has objected to each of the Requests stating that many of the Requests would involve: (1) gathering every email that Toomer sent since he started working in 2005; (2) locating all agreements between these various companies, some of which may not even relate to Toomer; and (3) identifying communications between other companies and governmental agencies that may not relate to Toomer. The amount of documents that Toomer seeks with his broad definitions is, frankly, limitless, and the Court finds the time and expense that would place on BEA to produce these documents outweighs Toomer's interests in them.

    *4. Conclusion*

The Court will not contort Toomer's Requests in such a manner so they survive Rule 26. Toomer was aware that some of his Requests were deficient but provided BEA with no supplemental Requests to cure those deficiencies. It is true that some of the information that Toomer seeks could be within the scope of discovery and relevant, but without more narrow requests, the burden on BEA is too great.

The Court finds all Toomer's Requests overly broad and unduly burdensome, and thus, Toomer's Motion to Compel is DENIED.

**C. Fees and Costs under Rule 37(a)(5)**

Each of the parties moved for attorney's fees and costs in their respective Motions pursuant to Federal Rule of Civil Procedure 37(a)(5)(A)–(B), which, on the granting or denial of a motion to compel discovery, allows the moving party or the responding party to recoup its attorney's fees and costs from the opposing party. Since both Motions are

denied, Rule 37(a)(5)(B) would be applicable here.

Under Rule 37(a)(5)(B), if a motion to compel discovery is denied "the court must . . . require the movant . . . to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." The Court must not order the payment if the motion "was substantially justified or other circumstances make an award of expenses unjust." *Id*.

The Court finds an award of fees and costs unnecessary because the Motions to Compel were both substantially justified. The discovery sought after in the Motions was likely relevant and within the scope of discovery, but other reasons warranted denial. It was, nonetheless, reasonable for each party to bring their Motions.

Thus, an award of attorney fees and costs will not be granted for either party; the parties will bear their own expenses.

### D. Motion to Extend Deadline and For Sanctions (Dkt. 122)

The arguments and issues in this Motion are largely focused on the issues surrounding the Motions to Compel and BEA's Motion for Summary Judgment. Toomer seeks an extension to respond to BEA's Motion for Summary Judgment until the Court rules on Toomer's Motion to Compel. Dkt. 122, at 1. Seeing as the Court denies both Motions to Compel and rules that the parties will bar their own costs, the Court sees no purpose in this Motion any longer. Thus, this Motion is DENIED as MOOT.

The Court wants to make clear that it will **not** consider any new motions to reopen discovery. Discovery has been closed for over a year and it will remain closed. The Court will not consider the same arguments it has already addressed regarding discovery. Briefing

for the Motion for Summary Judgment will RESUME with the issuance of this Motion.

## V. CONCLUSION

In sum, both Motions to Compel are DENIED, the party's will bear their own fees and costs, and the Motion to Extend and For Sanctions will be DENIED as MOOT. Briefing for the Motion for Summary Judgment will RESUME, and Toomer will have twenty-one (21) days from the issuance of this Order to respond.

## VI. ORDER

**IT IS HEREBY ORDERED:**

1. BEA's Motion to Compel (Dkt. 108) is **DENIED**.

2. Toomer's Motion to Compel (Dkt. 116) is **DENIED**.

3. The parties will bear their own fees and costs.

4. Toomer's Motion to Extend and For Sanctions (Dkt. 122) is **DENIED** as **MOOT**.

5. Briefing on the Motion for Summary Judgment (Dkt. 120) will **RESUME**. Toomer has **twenty-one (21) days** from the issuance of this order to respond to the Motion for Summary Judgment.

DATED: October 18, 2023

David C. Nye
Chief U.S. District Court Judge