UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE UNITED STATES OF AMERICA, *ex rel.* DOUGLAS V. TOOMER,<br><br>        Plaintiff,<br><br>v.<br><br>TERRAPOWER, LLC and BATTELLE ENERGY ALLIANCE, LLC,<br><br>        Defendants. | Case No. 4:16-cv-00226-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Defendant Battelle Energy Alliance, LLC's Motion for Summary Judgment. Dkt. 120. The Court heard oral argument on February 7, 2024. Dkt. 136. Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. For the reasons outlined below, the Court DENIES the Motion.

## II. BACKGROUND

### A. Factual History

Defendant Battelle Energy Alliance, LLC ("BEA") is a contractor with the United States Department of Energy ("DOE") that manages and operates the Idaho National Laboratory ("INL"). With DOE authorization, BEA entered into several Cooperative Research and Development Agreements ("CRADAs"). These CRADAs govern the

potential intellectual property rights of the United States, BEA, and TerraPower, LLC[1] in work done under the CRADAs. Information and data within the scope of work of a CRADA is called "Generated Information." Technology conceived of or reduced to practice[2] under the CRADA is a "Subject Invention." Under the provisions of the CRADAs, the United States has property rights in both Generated Information and Subject Inventions.

Plaintiff Douglas Toomer was a former BEA employee who served as the primary negotiator for the CRADAs and became the primary point of contact for the relationship between BEA and TerraPower. In his position, Toomer oversaw all projects associated with the CRADAs, including monitoring and reporting on each party's performance and ensuring compliance with the CRADAs and the laws that governed them.

In 2011 and 2012, Toomer helped draft and facilitate CRADAs between BEA and TerraPower involving the development of metallic fuel irradiation behavior, fabrication, and fast reactor structural materials related to the nuclear industry. The CRADAs also involved the development and irradiation testing of barrier coating variants in nuclear fuel rods.

On two occasions, Toomer asked TerraPower if it had applied for patents for inventions that could in any way have been developed under these CRADAs. On both

---

[1] TerraPower is a limited liability company which conducts research and development of nuclear energy technologies. Relevant to this case, TerraPower was developing nuclear technology in collaboration with the INL, hence the need for a CRADA.

[2] Reduced to practice is a term of art in patent law which indicates an invention is actually built or could be built. *Embodiment, Black's Law Dictionary* (12th ed. 2024).

occasions, TerraPower indicated it had not. However, during subsequent CRADA negotiations in March 2015, TerraPower provided two patent applications to Toomer. Toomer presented these patent applications to BEA scientists, who indicated that the second application was reflective of the fuel and experiments BEA had been working on for years. Because of this, Toomer called a "timeout" to gather more information about TerraPower's attempt to patent a fuel design that BEA had developed and was working on. After Toomer reported this to his supervisor, the supervisor spoke to the Director of the INL and President of BEA, who told him to hold TerraPower to the terms of the CRADA.

Toomer then challenged TerraPower on the patent application, and TerraPower indicated it did not believe the patent reflected intellectual property developed under the CRADA because it had developed the fuel designs in the patent prior to entering into the CRADA. BEA also indicated that *it*, not TerraPower, had developed the fuel designs in the patent. Toomer presented these conflicting issues to his supervisor and to BEA's legal department. Toomer sought clarification from BEA regarding the definition of "Generated Information" to better ascertain whether TerraPower had concealed or withheld information it was required to disclose. Toomer also sought to resolve the issue himself regarding whether the patent application fell within the scope of the CRADA (and therefore, involved potential Government property).

Toomer's research on the matter deepened, and he continued to escalate the issue to BEA's senior management and legal department, including BEA's president and general counsel. In meetings with management, Toomer insisted the DOE be brought in so that DOE and U.S. Taxpayers' rights and property under the CRADAs would be protected. He

MEMORANDUM DECISION AND ORDER - 3

received repeated indications that BEA was not willing to jeopardize its relationship with TerraPower. When Toomer indicated to BEA that "if it did not take [the issue] to DOE, he would," BEA became hostile and stated that Toomer's job was "to protect BEA and not to look out for [Toomer], DOE, or the taxpayer." Dkt. 131, at 8–9. Toomer was subsequently removed from his position as Relationship Manager and told to find other work.[3]

### B. Procedural History

Toomer initially brought this action in June 2016. Dkt. 1. He then filed an Amended Complaint in February 2017 under the False Claims Act ("FCA"), alleging a variety of FCA claims as a relator on behalf of the United States. Dkt. 6. In his initial Complaint, Toomer also asserted two additional claims for unjust enrichment and declaratory judgment on behalf of the United States, and a retaliation claim on his own behalf. The United States opposed Toomer's assertion of any claims on its behalf and filed a Motion to Dismiss the case on November 20, 2017. Dkt. 14. The Court granted the United States' Motion on October 10, 2018, and dismissed all claims asserted on behalf of the United States. Dkt. 40. The Court allowed Toomer's FCA retaliation claim to proceed. *Id*.

On August 15, 2022, Defendant Battelle Energy Alliance ("BEA") filed the instant Motion for Summary Judgment. Dkt. 120. The Court held the Motion in abeyance pending resolution of the Motions to Compel and Motion for Sanctions. Dkt. 123. After the Court's October 18, 2023, Memorandum Decision and Order denying the motions, briefing for the instant Motion resumed. Dkt. 127. Toomer responded to BEA's Motion on November 9,

---

[3] Further details of the alleged retaliatory action taken by BEA will be discussed later in the decision when the Court analyzes the third prong of Toomer's FCA claim.

2023 (Dkt. 130), and BEA replied (Dkt. 133). On February 7, 2024, the Court held a hearing on the Motion and took the matter under advisement. Dkt. 136.

## III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, this Court must "view[] the facts in the non-moving party's favor." *Id.*

To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation omitted). Accordingly, this Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001). Importantly, the Court does not make credibility determinations at this stage of the litigation. These determinations are reserved for the trier of fact. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir.

1992).

## IV. ANALYSIS

As noted, the sole remaining cause of action in this case is Toomer's claim for relief from retaliation under the FCA. Dkt. 71, at 20.

The FCA protects whistleblowers by prohibiting employers from retaliating against employees who engage in actions protected by the FCA. *See, e.g.*, *Moore v. Cal. Inst. Of Tech. Jet Propulsion Lab*, 275 F.3d 838 (9th Cir. 2002). Specifically, the FCA provides that:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee . . . in furtherance of an action under this section . . . shall be entitled to all relief necessary to make the employee whole.

31 U.S.C. § 3730(h).

To prevail on an FCA retaliation claim, a plaintiff must show three elements: "(1) that he or she engaged in activity protected under the statute; (2) that the employer knew the plaintiff engaged in protected activity; and (3) that the employer discriminated against the plaintiff because he or she engaged in protected activity." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). In an FCA retaliation claim, "an employer does not face liability for the suspected or actual fraud; it faces liability for a retaliatory act against the investigation employee." *Id.*

BEA contends that Toomer has failed to establish any of the three elements required to prevail on his retaliation claim. First, it argues Toomer was not engaged in protected activity under the FCA because Terrapower's actions which Toomer was investigating

MEMORANDUM DECISION AND ORDER - 6

could not have reasonably led to an FCA action, and even if they could have led to such action, there was no nexus between that action and any fraudulent conduct by BEA. Second, BEA argues Toomer cannot show it had notice of Toomer's protected conduct. Finally, BEA argues Toomer cannot establish that it took adverse employment action against him; even if he could, BEA contends it had valid, nonretaliatory reasons for its actions. The Court will address each argument in turn.

### A. Protected Activity

An employee engages in a protected activity for purposes of an FCA retaliation claim if he "reasonably believe[s] that [the employer] was possibly committing a fraud against the government, and []he investigated the possible fraud." *Mendiondo*, 521 F.3d at 1103. The first requirement entails both subjective and objective elements: it must be true both that: "(1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government." *Moore*, 275 F.3d at 845.

As a preliminary matter, the Court must determine whether a "fraud against the government" was even a possibility on the facts here. 31 U.S.C. § 3729 sets forth the ways in which a party can commit such fraud under the FCA. Most relevant to the facts before the Court today is 31 U.S.C. § 3729(a)(1)(G), which includes as an act of defrauding when an entity "knowingly makes, uses, or causes to be made or used a false record or statement material to an obligation to pay or transmit money or property to the Government," and when an entity "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." In this case, the

"money or property" at issue are Generated Information and Subject Inventions under the CRADAs. Although there has been much debate between the parties as to the meaning of Generated Information, the Court finds that, per the terms of the CRADAs, the Government has a property interest in both Generated Information and Subject Inventions. Dkt.1-2, at 4. Accordingly, it is within the realm of possibility that Terrapower and/ or BEA could have violated the FCA if they withheld, concealed, or otherwise sought to improperly avoid the transmission of such property to the Government.

Turning now to whether Toomer was engaging in protected conduct, the Court examines: (1) whether Toomer in good faith believed BEA was possibly defrauding the government, (2) whether a reasonable employee in similar circumstances might have believed BEA was defrauding the government, and (3) whether Toomer investigated the possible fraud.

### 1. Toomer's subjective belief

In his Amended Complaint and his briefing on the matter, Toomer maintains he believed both TerraPower and BEA were potentially defrauding the government: TerraPower by withholding and concealing Generated Information and patents for Subject Inventions, and BEA by seeking to "cover-up TerraPower's wrongdoing." Dkt. 10, at 10–13, 20; *see also* Dkt. 130, at 4. BEA appears to argue that Toomer did not have a good faith belief that potential fraud was occurring, because he repeatedly indicated that he "had not made judgment" about any wrongdoing, and that his purpose for raising the concerns was simply to ensure that all parties were "sure what the expectations [we]re" regarding the CRADAs. However, viewing the facts in the light most favorable to Toomer as the

nonmovant, and especially considering his actions in escalating and pressing the issue demonstrating extreme concern over the concealment of potential Government intellectual property, a jury could reasonably find that Toomer did have the requisite good faith belief that TerraPower and/or BEA were possibly defrauding the government.

        *2. Reasonable belief*

The Court next analyzes whether Toomer's belief was objectively reasonable; in other words, whether a reasonable employee under similar circumstances would believe BEA was possibly defrauding the Government. BEA asserts Toomer was simply trying to resolve "the disparate opinions of the BEA scientists and TerraPower regarding whether the fuel designs were within the CRADA or not within the CRADA," to dispel "the uncertainty in the CRADA so the issue could be resolved by BEA and TerraPower and to set expectations for INL and others entering CRADAs." Dkt. 120-1, at 9. Interestingly, BEA also seems to indicate that such activities wouldn't lead a reasonable employee to conclude BEA was possibly defrauding the Government, but the resolution of the question as to what technologies fell under the CRADA could have resulted in such a conclusion.

Construing the facts in the light most favorable to Toomer, TerraPower, at best, withheld and, at worst, lied about the patents it was seeking on intellectual property that may have constituted Government property under the CRADAs. That was the entire purpose of Toomer conducting his inquiry in the first place. An employee might reasonably believe that an employer was possibly defrauding the Government by concealing, withholding, or misrepresenting information about profitable discoveries it was legally required to disclose (or, in BEA's case, covering up such concealment). Accordingly, under

MEMORANDUM DECISION AND ORDER - 9

the disputed material facts, a jury could find that Toomer's belief was objectively reasonable.

### 3. Investigation

The Ninth Circuit has not articulated a specific test defining the form an employee's investigation must take to satisfy the investigation prong of an FCA retaliation test. "The investigatory activity must, however, have a nexus to the FCA. Investigation of regulatory noncompliance alone or attempting to get an employer to comply with Federal and State regulations are not protected activities." *United States ex rel Garrett v. Kootenai Hosp. Dist.*, 2020 WL 3268277, at *9 (D. Idaho June 17, 2020) (cleaned up). In other words, a plaintiff bringing an FCA retaliation claim must show actual or potential actions by the employer that "reasonably could lead to a *viable* FCA claim." *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996).

If it turned out that TerraPower had indeed filed a patent application for generated information or a subject invention which fell under the terms of the CRADA, and BEA helped cover that up, there could have been a viable FCA claim. Both parties concede that Toomer tried to clarify the terms of the CRADA for months, including seeking clarification from both parties on the work that had been performed. Toomer ultimately was trying to determine whether TerraPower had inappropriately claimed an invention under the CRADA as its own. The Court has already determined a jury could find such belief was objectively reasonable. Therefore, all of Toomer's subsequent efforts to clarify and investigate the situation, viewed in a light most favorable to Toomer as the non-moving party, satisfy the investigation prong of the FCA.

1. **B. Notice**

Toomer must next establish that BEA knew he was engaged in a protected activity. Unless an employer is aware its employee is investigating fraud, the employer cannot "possess the retaliatory intent necessary to establish a violation of" the FCA. *Hopper*, 91 F.3d at 1269. When an employee's job responsibilities involve monitoring and reporting activities, "it takes more than an employer's knowledge of that activity to show that an employer was on notice of a potential *qui tam* suit." <u>United States ex rel. Campie v. Gilead Scis., Inc.</u>, 862 F.3d 890, 908 (9th Cir. 2017). "To show notice in a retaliation claim based on activities falling within the relator's scope of employment, the relator must allege the law was being violated and the relator's intention to report the violation." *Garrett*, 2020 WL 3268277, at *9.

BEA maintains it had no way of knowing Toomer was investigating or reporting potential fraud because monitoring and reporting compliance were duties of his position overseeing the CRADAs and the relationship between the parties. Dkt. 120-1, at 11–12. The Court disagrees.

In his pleadings, depositions, requests for information, and briefing, Toomer maintains he discovered TerraPower was withholding or concealing potential Government intellectual property, and that it was using Government resources to support an unlawful business model. Toomer reported his discoveries to his supervisor at BEA and escalated the issue to BEA upper management and legal counsel when he became concerned that appropriate action was not being taken. While Toomer's position did involve routine project monitoring, Toomer lobbied for these specific issues to be escalated to DOE, and

even told BEA management that if it didn't get DOE involved "he would." Dkt. 131, at 8. Importantly, Toomer also alleges BEA openly resisted his efforts to investigate TerraPower's potential fraud by telling him that "his job was to protect BEA and not to look out for [himself], DOE, or the taxpayer," and warning him to be prepared for "ramifications" if he pressed the issue further. Dkt. 10, at 14–15.

Viewing these facts in the light most favorable to Toomer, the Court finds there is a genuine issue of material facts on whether BEA was on notice that he was investigating fraud and that his investigation could potentially lead to a viable FCA claim. His reports to, and conversations with, BEA were undertaken in an effort to correct the potential concealment of Government intellectual property. This kind of concealment, if true, would constitute fraud actionable under the FCA. The facts suggest that BEA's senior management and legal counsel knew of Toomer's research into the matter and had multiple conversations with him discussing the issue. Thus, at this stage of the proceedings, the Court finds Toomer has satisfied the notice prong of his retaliation claim.

### C. BEA's alleged discriminatory employment action

To survive summary judgment, the final prong of an FCA retaliation claim requires Toomer to show BEA retaliated against him because he was engaging in protected activity. At the time of briefing and oral argument related to this Motion, BEA cited *United States v. Health* to argue the Court should apply the *McDonnell-Douglas* burden-shifting framework here, even though the Ninth Circuit had not explicitly addressed its applicability. 2016 WL 3540954, at *12 (N.D. Cal June 29, 2016); Dkt. 120-1, at 13. Ultimately, such an argument was unnecessary, as the Ninth Circuit has since made such a

finding. *Mooney v. Fife*, 118 F.4th 1081, 1090 (9th Cir. 2024) ("We clarify today that the McDonnell Douglas burden-shifting framework . . . applies to FCA retaliation claims.")

Under the McDonell-Douglas framework, an employee must first make a prima facie showing of an adverse employment action, at which point the burden shifts to the employer to show a legitimate, non-retaliatory reason for the adverse action. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) "If the employer satisfies its burden, the employee must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination." *Id.*

### 1. Toomer's Prima Facie Showing

To establish a prima facie case of an adverse employment action, a plaintiff must demonstrate (1) "that he or she was engaged in protected activity," (2) "that he or she suffered an adverse action," and (3) "that there was a causal link between the two." *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015). To establish the requisite causal link, a plaintiff must show that "his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). Ultimately, on summary judgment, "[t]he requisite degree of proof necessary to establish a prima facie case . . . is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

The facts, viewed in Toomer's favor, show that Toomer was engaged in a protected activity. As to suffering an adverse action, Toomer alleged he was "isolated from management with zero communications and his co-workers kept their distance." Dkt. 120-

1, at 12. When he insisted on DOE being involved, BEA's counsel "became hostile and proclaimed that 'his job was to protect BEA and not to look out for [Toomer], DOE, or the taxpayer.'" *Id.* Toomer was also told by BEA management and legal counsel to be prepared for "ramifications" and "repercussions" if he continued to push the Generated Information issue. *Id.* In December of 2015, during his annual review, Toomer was stripped of all his job responsibilities, told to find work elsewhere within BEA, and not given an end of year bonus that he had routinely received in prior years. He was subsequently stonewalled from other job opportunities at BEA.

BEA has indicated that "for purposes of this Motion it will accept [Toomer's] allegations." Dkt. 102-2, at 1–2. At the hearing on this Motion, BEA confirmed its intention to accept Toomer's allegations as true. Accordingly, the Court proceeds with its analysis on Toomer's version of events. Under the minimal standard of proof, Toomer has established that he was both subject to an adverse employment action and that the action had a causal link to his report and investigation of TerraPower's potential wrongdoings. Considering the temporal proximity of TerraPower's de-funding of Toomer's position, the difficulties Toomer faced in finding other projects within BEA, and the hostility from coworkers after his reports of potential FCA violations, a causal link can be inferred. At this stage of the proceedings, Toomer has made a prima facie showing of adverse employment action.

*2. BEA's Legitimate and Non-Retaliatory Reason for Adverse Action*

BEA's version of events differs greatly from Toomer's. BEA claims TerraPower informed BEA it would no longer be funding a Relationship Manager position in

conjunction with its work under the CRADAs. As a result of the position being defunded, BEA told Toomer he would continue to be consulted in the work under the CRADA with TerraPower, but would not be the point-of-contact for that relationship. BEA also told Toomer it had other projects he could work on that would be funded by BEA. It also claims it encouraged him to discuss additional opportunities with other internal directors and project managers. BEA repeated this sentiment during Toomer's positive performance review in December of 2015, indicating he needed to find additional projects to work on within BEA. Toomer was not subject to any cut in pay or benefits as a result of TerraPower discontinuing his role as Relationship Manager. BEA is silent as to whether any additional harassing behavior, isolation from coworkers, stripping of job responsibilities, or humiliating actions were undertaken leading up to Toomer's termination. However, BEA does claim Toomer took an extended leave directly after his performance review, which prevented him from being assigned to other projects.

In analyzing this prong of the McDonnell-Douglas framework, the Court is confronted with two different burdens. First, BEA carries the burden of showing there is no dispute as to any material fact, and it also carries the burden of showing there is a legitimate and non-retaliatory reason for any adverse employment action. As to the first, the conflicting version of events between Toomer and BEA show that there remains a dispute as to whether BEA took adverse employment action against Toomer. But for the sake of applying the framework, BEA has provided a legitimate, non-retaliatory reason for removing Toomer from the Relationship Manager position: namely, the position was defunded by TerraPower. However, BEA fails to address several of Toomer's other

MEMORANDUM DECISION AND ORDER - 15

allegations, even going so far as to accepting Toomer's version of events as true for the purposes of this motion. This, coupled with the fact that the Court must construe any disputed facts in favor of Toomer as the non-movant on summary judgment, means Toomer has met his burden under the McDonell-Douglas framework.

### 3. Mere Pretext

Along the same vein, even if BEA's reasons were legitimate and non-retaliatory, Toomer successfully alleges facts that could indicate BEA's actions were mere pretext for discriminatory conduct. For example, Toomer alleges that BEA actions effectively excluded him from reviewing TerraPower's activities under the CRADAs. And he alleges they did this because of their disapproval of his investigation into the alleged fraud. BEA also stripped Toomer of his responsibilities under the CRADA and shifted them to Toomer's supervisor, allowing the supervisor to continue managing the relationship with TerraPower after removing Toomer from his role. The passing of responsibilities to the supervisor is particularly telling, when the position was supposedly defunded. By Toomer's account, and by all indications, BEA stripped Toomer of his oversight responsibilities when he wouldn't drop the potential fraud issue.

Furthermore, Toomer alleges that he was isolated from his coworkers and management, that BEA either barred him from obtaining alternative employment or failed to notify him of internal openings until after they had been filled, humiliated him in the workplace, and otherwise created a hostile work environment. Viewing the facts in the light most favorable to Toomer, the Court finds Toomer has provided enough evidence that BEA's reasons for the way it treated him were mere pretext. At the very least, Toomer's

investigation and BEA removing him from his Relationship Manager role, isolating him from other employees, and preventing him from obtaining other work within the organization, even when such allegations do not coincide with BEA's version of events, indicate a dispute of material fact that make summary judgment inappropriate at this juncture.

## V. CONCLUSION

Here, BEA has not shown that, viewing the facts in the light most favorable to Toomer, it is entitled to an award of summary judgment. Accordingly, the Court DENIES BEA's Motion for Summary Judgment.

## VI. ORDER

IT IS HEREBY ORDERED THAT:

1. Defendant BEA's Motion for Summary Judgment (Dkt. 120) is DENIED.

DATED: March 31, 2025

_____
David C. Nye
Chief U.S. District Court Judge